ESTEBAN RAMIREZ, ADMINISTRATOR, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, ET AL., APPELLANTS.

FILED APRIL 10, 1928. No. 25521.

*Byron Clark, Jesse L. Root, J. W. Weingarten* and *P. E. Romig,* for appellants.

*M. F. Harrington, George M. Harrington* and *E. C. Barker, contra.*

Heard before Goss, C. J., Rose, Good, Thompson, Eberly and Howell, JJ.

Rose, J.

This is an action to recover $15,000 in damages for alleged negligence resulting in the death of Joseph Ramirez. At the age of six years, November 5, 1925, he fell into an uncovered manhole to a sewer containing scalding water and steam and died as a result. The names of his father and mother were respectively Esteban Ramirez and Juana Ramirez. They resided at the time in the body of a railroad boxcar from which the wheels and trucks had been removed. It stood on the ground in the railroad yards of the Chicago, Burlington & Quincy Railroad Company at Alliance, Nebraska. For the use of the boxcar as a residence the Ramirez family paid the railroad company $6 a month. The father of the boy was an employee of the railroad company. The boxcar was one of 16 situated in two rows with a space of 25 feet between. Each boxcar was occupied by the family of a railroad employee. The general direction of the rows of boxcars was east and west. Both north and south of them there were railroad tracks. Children of railroad employees played on the railroad grounds. The manhole was north of, and near, the northern row, a short distance south of a railroad water tank, a water treating plant and other buildings on the railroad grounds, not far from the boxcar body occupied by the Ramirez family. On the date mentioned Cecil F. Buckley and Clarence C. Holms, employees of the railroad com-

.pany, removed the cover from the manhole in the course of their employment. The child fell into it and was fatally injured. Esteban Ramirez, Administrator of the Estate of Joseph Ramirez, deceased, is plaintiff. The Chicago, Burlington & Quincy Railroad Company, Cecil F. Buckley and Clarence C. Holms are defendants. Details of facts thus outlined were alleged in the petition which contained pleas that defendants had knowledge of existing conditions and surroundings and that the child had a right to be on the premises of the railroad company. Negligence imputed to defendants was their failure to perform their duty to guard the uncovered manhole and their failure to perform their duty to warn the child of the danger of falling into the opening.

Defendants, among other things, denied the negligence charged and alleged that the boy was a trespasser at the place of the accident, that he had been warned to keep away, that his parents had been told to keep him away, and that his own negligence and that of his parents caused his death.

The alleged facts constituting defenses were put in issue by a reply.

Upon a trial of the case the jury rendered a verdict in favor of plaintiff and against all of the defendants for $6,000. From a judgment therefor defendants appealed.

The trial court overruled a challenge to its jurisdiction over the persons of Buckley and Holms, defendants, and the ruling is assigned as error. The petition was filed in the district court for Sheridan county December 21, 1925, the railroad company, Buckley and Holms being sued jointly as defendants. Together they were, in effect, charged with negligence resulting in a joint liability to plaintiff. A summons for Buckley and Holms was issued out of the district court for Sheridan county to the sheriff of Box Butte county December 22, 1925, and therein was served by him on Buckley December 26, 1925, and on Holms December 30, 1925. A summons for the railroad company was issued out of the district court for Sheridan county

to the sheriff thereof December 22, 1925, but there was a delay in service owing to a snowstorm. It was returned by the sheriff to the clerk who changed its date from December 22, 1925, to January 9, 1926. The return and answer days were changed accordingly. In the changed form the summons was again delivered to the sheriff of Sheridan county and therein served on the railroad company January 15, 1926. The position of Buckley and Holms on their objection to jurisdiction was stated by them as follows:

"It is our contention that until a summons shall have been issued that is served upon the resident defendant, a court has no jurisdiction to issue a summons to residents of another county who are not in the county at the time the petition is filed, and who did not consent to be sued."

The statutory authority to issue from the district court a summons to the sheriff of another county for defendants residing therein was granted in this form:

"When the action is rightly brought in any county, according to the provisions of this code, a summons shall be issued to any other county, against any one or more of the defendants at the plaintiff's request." Comp. St. 1922, sec. 8570.

"A civil action must be commenced by filing in the office of the clerk of the proper court a petition," says another section of the statute, "and causing a summons to be issued thereon." Comp. St. 1922, sec. 8567.

These statutory provisions seem to require issuance of summons for the resident defendant but do not require subsequent service thereof as a prerequisite of jurisdiction to issue a summons to another county for defendants residing therein. After the filing of the petition two summonses were in fact issued the same day—December 22, 1925. One of them was directed to the sheriff of Box Butte county for Buckley and Holms and was subsequently served upon them. The other was issued to the sheriff of Sheridan county for the resident defendant, the railroad company, and as changed in the manner indicated it was served

January 15, 1926. The changing of dates was an irregularity but did not impair actual service as notice or invalidate the summons. The railroad company was properly sued and served with summons in Sheridan county. Buckley and Holms who resided in Box Butte county were charged with negligence imputed also to the railroad company. Under the petition the three defendants were jointly answerable to plaintiff in the same action for the same liability. The words, "rightly brought," in the clause, "When the action is rightly brought in any county," relate to "the action" for the purpose of summoning defendants. The better interpretation of the statute seems to be that, for the purpose of summoning resident defendants and other defendants residing in another county, the action is "rightly brought" upon the filing of a petition charging in good faith all defendants jointly with actionable liability to plaintiff and issuing for all defendants summonses directed to the sheriffs of the proper counties. In this view of the statutes there was no error in the order overruling the objection to jurisdiction.

The principal controversies relate to questions of evidence and law applicable to plaintiff's charges of negligence and in defense to alleged negligence of parents and child. Defendants contend that actionable negligence on their part was not shown, that the negligence of parents and child was the proximate cause of the latter's death and that therefore there should have been a peremptory instruction in favor of defendants. The problems for solution require consideration of the circumstances surrounding the fatal incident. The manhole was a surface opening to an underground sewer draining hot water from locomotive boilers and other refuse matter. Over the manhole, level with the ground, was a perforated cast-iron cover weighing 80 or 90 pounds, admitting surface water and permitting steam to escape. Northwest at a distance of 18 feet there was a water treating plant extending from the ground to a considerable height where water was treated and prepared for locomotive boilers. In the upper

part of the plant sediment consisting of sugar, sulphate of iron, hydrate of lime and soda ash, forming a sticky substance, accumulated. Removal of sludge once in 30 days was necessary. It was lowered from the upper part of the treating plant in a bucket by means of a rope, carried 18 feet to the manhole and there emptied into the sewer. To perform this task Buckley and Holms came on the grounds at 2:45 p. m. on the fateful day. Buckley pried the cover from the manhole, went to the treating plant 18 feet away and proceeded to remove sediment, filling and lowering the bucket which was carried by Holms to the manhole and emptied. While thus engaged, when neither was at the uncovered manhole, the boy fell into it. Without identifying him Holms saw his form as he fell. Buckley at the instant was out of view.

On behalf of defendants there is testimony that children of railroad employees residing in boxcar bodies, designated in the record as the "Mexican Village," were never allowed on the premises north of the boxcars; that children were told not to go there; that they were never invited to or permitted on that part of the grounds; that railroad employees who had charge of the Mexican Village and authority over laborers in the railroad yards had orders to keep children away from the premises north of the boxcar bodies where the manhole was situated; that children were often taken home from there and parents cautioned to prevent further trespassing; that parents of the deceased child were familiar with existing dangers and surroundings, having lived within 50 feet of the manhole for two years, while the father was an employee of the railroad company, performing at the time of the accident services in the roundhouse northeast of the boxcar body in which he and his family made their home; that there were available playgrounds in the open space between the rows of boxcar bodies and in an unoccupied 50-foot strip of ground south of them, there being a fence at the southern boundary of the strip north of the railroad tracks and stockyards.

Under the circumstances disclosed by the evidence defendants contend that they owed the parents and child no duty except to refrain from inflicting wanton or wilful injury, a duty conscientiously performed, citing *Shults v. Chicago, B. & Q. R. Co.*, 83 Neb. 272, 91 Neb. 587, and *Spence v. Polenski Bros., Schellak & Co.*, 110 Neb. 56.

In each of those cases reference is made to the opinion in *Chesley v. Rocheford & Gould*, 4 Neb. (Unof.) 768, where this language was used:

"As to the bare licensee who goes as an uninvited guest to the premises, no duty is owed by the licensor as long as no wanton or wilful injury is inflicted by the act or misconduct of the licensor or his servants."

In that case, however, liability for failure to exercise reasonable care to prevent injury from unusual dangers under peculiar circumstances was recognized. In a later action to recover damages for the death of a child negligence and contributory negligence were held to be questions for the jury, the court quoting with approval the following:

"Much may depend upon the character of the injury, the circumstances under which it occurred, and the size, intelligence and maturity of the child." *Tucker v. Draper*, 62 Neb. 66.

There is wisdom in the precept that parents whose negligence is the sole cause of injury to their child should not be rewarded for their wrong by compensation in damages recovered from innocent third persons. There are circumstances, however, under which performance of the common duty to refrain from inflicting wanton or wilful injury is not the full measure of accountability for failure to protect a child of tender years from known and obvious danger. Did the record present such a case to the jury for determination?

The railroad company itself created the environment in which the Ramirez family lived. The Mexican Village had been in existence 20 years. It was a corporate creation in the midst of a system of railroad tracks and other rail-

road facilities. The railroad company provided the only means of ingress and egress. Vehicles entered and left at grade. There was a viaduct for pedestrians but they sometimes walked on the railroad tracks. These were the means of access to town, church and school. The boxcar home of the Ramirez family was about 8 feet wide and 42 feet long. They slept in one end and the meals were cooked in the other end. They had resided there two years. The distance from the Ramirez boxcar to the manhole was about 45 feet, there being another boxcar between. There was no fence or other obstruction between the Ramirez home and the manhole. The boxcars in the rows were three or four feet apart. Children went between them to the forbidden ground on the north. They played around the covered manhole and jumped over it. They did not obey the orders to keep away. This was known to defendants who had given disregarded warnings. There was nothing to indicate danger at the manhole when covered. Ordinarily the cover was removed for a few hours at intervals of 30 days. The playground 25 feet wide between the rows of boxcars was used at times by delivery trucks and other vehicles conveying passengers and supplies to the Mexican Village. The other playgrounds 50 feet or more in width south of the boxcars were not far from railroad tracks, stockyards and the loading platform for stock. The warnings and orders to keep away from the grounds north of the boxcar bodies did not repress the natural and wholesome impulses of children for freedom, light, air, sunshine and play or supply the judgment and caution lacking in children of tender years.

At the time of the accident the father of the boy was at home changing his clothes for work in the roundhouse. His earnings indicated that he was without means to employ a servant to care for his boy. Presumably the mother was at her household duties. Buckley and Holms had knowledge of existing conditions and surroundings and were working at or near the place of danger. A watchman at the manhole for a few hours once in 30 days would

have prevented the accident. A proper metallic screen around the open manhole would have accomplished the same purpose without interfering with the use of the sewer as a conduit for water and sludge. One or the other of these precautions would have saved the boy. To measure such a simple and reasonable degree of care with human life and sustain the defense as a matter of law under the circumstances on the ground that defendants did not wantonly or wilfully inflict injury would disregard common dictates of humanity and justice. Plaintiff made a case for the consideration of the jury and the evidence is sufficient to sustain a judgment in his favor. In this view of the record error prejudicial to defendants has not been found in the rulings on evidence or in the giving or refusing of instructions.

The damages allowed by the jury are assailed as excessive and seem to exceed the amount generally sustained by reviewing courts for the pecuniary loss resulting from the death of a child of tender years—six years in the present instance. The judgment of the district court will stand reversed unless a remittitur for $1,000 is filed with the clerk of this court within 20 days. If so filed, the judgment to the extent of $5,000 will stand affirmed.

AFFIRMED ON CONDITION.