Chicago Lumber Company of Kearney, Nebraska, a
corporation, appellant, v. Ray G. Gibson, doing business
as Kearney Sheet Metal and Roofing Company,
appellee.

138 N. W. 2d 832

Filed December 17, 1965. No. 35974.

Haney, Walsh & Wall and Munro, Parker & Munro,
for appellant.

Tye, Worlock, Knapp & Tye and Jeffrey H. Jacobsen,
for appellee.

Heard before White, C. J., Carter, Spencer, Boslaugh,
Brower, Smith, and McCown, JJ.

Spencer, J.

This is an action for damages in consequence of a
fire which occurred January 17, 1963, on certain prem-

ises owned by Chicago Lumber Company of Kearney, Nebraska, a corporation, hereinafter referred to as plaintiff. Plaintiff alleged the fire was proximately caused by the negligence of Ray G. Gibson, doing business as Kearney Sheet Metal and Roofing Company, hereinafter referred to as defendant, in the renovation of a flue on a heating stove located on the premises. The jury returned a verdict for the defendant, and the plaintiff has perfected an appeal to this court.

The fire occurred in an old uninsulated building used for storage and as a set-up shop to assemble and repair farm machinery. A wood and coal-burning heating stove was used to heat the set-up shop. The roof stack on the roof of the building broke off or was rusted through and the defendant was called to make repairs thereto. Plaintiff's general manager testified that he told defendant's employee: " 'Whatever it takes, go ahead and do it, as long as it's safe.' " One of defendant's employees who inspected the stove before the repair testified he recommended to plaintiff's general manager "that the stovepipe be removed, changed, and another system put up; that it wasn't good enough for the amount of fire that they had in there; * * *." The employee further testified plaintiff's general manager said: " 'That's the way it has been. Put it back like it was.' "

The testimony is extensive and it will serve no useful purpose to detail it herein further than necessary to understand the assignments of error alleged. Plaintiff's testimony in substance is to the effect that the fire was caused by the improper installation of the flue; that it was installed without proper insulation; and that it was installed in such a manner as not to allow sufficient spacing between it and the combustible material of which the roof of the building was constructed. Defendant's testimony is to the effect that a new stovepipe was put in exactly like the pipe it replaced. It was installed through a sleeve which was not removed or changed in any way. Defendant also adduced testimony that it was

not possible to determine the cause of the fire. The fire started soon after the heating stove was put to use after the repairman left. It is evident from its verdict that the jury accepted the defendant's theory of the case.

Plaintiff sets out 22 assignments of error which will be grouped for purposes of discussion herein. Plaintiff's principal assignment relates to the refusal of the trial court to take judicial notice of building code ordinance No. 1104 of the city of Kearney, and certain sections of the national building code. Plaintiff's assignments of error Nos. I, II, III, V, and VII relate directly to this assignment.

At the start of the trial and before the introduction of any evidence, the plaintiff asked the court to take judicial notice of building code ordinance No. 1104 of the city of Kearney, and of Article 5, section 546, of said ordinance, as well as of sections 1002.1 and 1008.4 of the national building code, 1955 edition, which is referred to in the building code of the city of Kearney. The defendant objected "for the reason that none of the same has any application to any of the issues in this matter," which motion the court said it was sustaining at that stage.

At the close of its case-in-chief, plaintiff again requested the court to take judicial notice of sections 1002.1 and 1008.4 of the national building code, and in support thereof had identified and offered in evidence photostatic copies of said sections. The objection previously made was renewed and a further objection was made as to foundation. No ruling appears in the record, but it is evident that the photostatic copies were not received in evidence.

Plaintiff then offered chapter 8 of the city code of Kearney for 1959, as revised through 1963. This is the building code of the city. Defendant objected for the reason that it was incompetent, irrelevant, immaterial,

and not within the issues of this lawsuit, which objection was sustained.

We do not understand the basis for plaintiff's insistence that the district court take judicial notice of the city ordinance involved or of the national building code. As we said in Dell v. City of Lincoln, 168 Neb. 174, 95 N. W. 2d 336: " 'The general rule is that ordinances * * * are not judicially known to courts having no special function to enforce them, although the power of municipalities to pass ordinances * * * is judicially noticed by the courts within the state.' " This has long been the rule in this jurisdiction. We said in 1894 in Foley v. State, 42 Neb. 233, 60 N. W. 574: "Courts will not, as a rule, take notice of municipal ordinances, unless required to do so by special charter or general law."

A party, to have the benefit of a municipal ordinance, must generally plead and prove the existence of the ordinance. See Perrine v. Hokser, 158 Neb. 190, 62 N. W. 2d 677.

Plaintiff in its petition pleaded provisions of ordinance No. 1104 of the city of Kearney, but did not offer said ordinance except as it may have been integrated into chapter 8 of the Kearney city code. From plaintiff's petition, we determine that the portions embraced in plaintiff's pleadings are found in sections 8.114, 8.115, and 8.80 of chapter 8. The first two are embraced in article VI of chapter 8, which applies to an R3 residence district. Section 8.80 is found in article IV, R1 residence district. Article IX covers the industrial district, and the sections pleaded by plaintiff have no application to it. The record does not disclose the location within the city of Kearney of plaintiff's premises, but from the evidence it would appear to be located in the industrial and not a residential district. It would appear that plaintiff has excerpted completely out of context portions of the Kearney building code pertaining to residential districts, which it sought to have applied to what appears to be an industrial or commercial

building in the industrial area. One of the plaintiff's witnesses located the building as directly behind plaintiff's main building, which is located on Central Street. This is as close as the record gets to locating it within the city of Kearney. The evidence is conclusive that the building was used exclusively for a set-up shop and for storage. The plaintiff has not called our attention to any provisions of the city code which might have application to industrial or commercial buildings. There is no merit to any of the above assignments of error on the record presented to this court.

Assignments of error Nos. IV and VI are directed to plaintiff's contention that it was unduly limited in its cross-examination of Carrol Sheldon, and to the court's comments thereon. There is no merit to plaintiff's assignments. Plaintiff's counsel was either confused or misunderstood the testimony of the witness. Plaintiff's counsel was unduly repetitious and the trial court was strictly within proper bounds in restricting further repetition. The trial court has a certain discretion in determining the limits of cross-examination, and the extent to which repetition should be permitted must necessarily be within the discretion of the trial court. See Longman v. Pope, 111 Neb. 838, 197 N. W. 955.

The comments of the court which are assigned as prejudicial error are as follows: "The Court: What is counsel trying to do, here. He is going over the same thing and he is trying to confuse the witness about things about which he has already testified. Are you trying to stall, counselor? Mr. Wall: No, I'm not. The Court: Well, then, lets move on. * * * Q No, Mr. Knapp and I were both talking about the top of the sleeve. Mr. Knapp: I object to that, Your Honor, as—The Court: Sustained. I think counsel is the only one that has been talking about the top of the sleeve. The witness hasn't been. That's where we have been having the difficulty. Mr. Wall: I would like to have the court instruct the jury to disregard the last remark of the

court. The Court: Yes, the jury will disregard the last remarks of the court."

From the record, it is understandable why the court made the observation it did in the first instance. It was necessary for the court to step in if it was to maintain control of the trial. The court, however, should have made the observation out of the hearing of the jury. In the second instance, the court on request directed the jury to disregard the remark. In neither instance does the record reflect that any objection was made to the remarks of the court. In Bolio v. Scholting, 152 Neb. 588, 41 N. W. 2d 913, we held: "A prerequisite to review on appeal of alleged improper conduct of and statements by a trial judge, on the trial in the presence of the jury, is an objection and exception thereto." See, also, Pittenger v. Salisbury & Almquist, 125 Neb. 672, 251 N. W. 287.

Plaintiff in its brief, possibly to explain its failure to object, states: "It is contended that even though the Court instructed the jury to disregard his commentary, the harm resulting therefrom had already taken place." The obvious answer is that plaintiff cannot wait until an unfavorable verdict to decide that it wants to object to the remarks. If it was plaintiff's reaction that the harm could not be cured, it should have moved for a mistrial. As we said in Law v. Gilmore, 171 Neb. 112, 105 N. W. 2d 595: "A party is not permitted to proceed with the trial without objection and speculate on the outcome of the jury's verdict, and, if unfavorable, contend that a mistrial should have been declared, when he did not ask for the same at the time."

Plaintiff's assignments of error Nos. IX, X, XI, XII, XIII, XIV, XVI, XVII, and XVIII all relate to the question of plaintiff's damages. We see no necessity to discuss these assignments herein inasmuch as the jury found against the plaintiff on the cause of the fire.

Plaintiff's assignment of error No. VIII is directed to the trial court's instruction No. 8, which is as follows: "If you find that the defendant's employees notified

plaintiff or its employees of defective conditions existing in the chimney, and that the plaintiff directed defendant's employees to make only the repair actually made by defendant, and that the other defective conditions proximately caused the fire and resulting damages rather than the repairs made by defendant, then the plaintiff can not recover." It is plaintiff's contention that the defendant did not make the repairs indicated by the plaintiff. This was a question of fact to be determined by the jury. Instruction No. 8 set out the defendant's theory of the case. The jury obviously believed that the repairs were made as directed by plaintiff's general manager, and there is evidence to sustain that finding.

Plaintiff's assignment of error No. XIX complains of the admission into evidence of the negatives of the pictures constituting exhibits Nos. 1 through 14 which were offered by the plaintiff and received in evidence. Plaintiff's assignment of error No. XX is directed to the admission into evidence of the enlargements of some of the photographs received in evidence which were made from the negatives. The negatives were offered during the cross-examination of the photographer who testified he made enlargements from them. The enlargements were extensively used in cross-examination of the plaintiff's expert as well as in the examination of defendant's expert. Many details which were obvious in the enlargements could not be readily discerned in the small prints offered by the plaintiff. There is no merit to plaintiff's assignments of error Nos. XIX and XX.

Plaintiff's assignment of error No. XXI refers to the fact that exhibit No. 68 was identified but was not offered in evidence although defendant's witnesses testified concerning it. Exhibit No. 15-A is the boot or saddle which sat around the stovepipe on the top of the roof. Exhibit No. 68 was a new boot or saddle and had been obtained from a sheet metal shop for demonstration purposes. The record reflects that it was an exact replica of exhibit No. 15-A. We fail to see how the plaintiff

could possibly have been prejudiced by defendant's failure to offer exhibit No. 68 in evidence. We also observe that plaintiff availed itself of the opportunity to cross-examine defendant's witnesses with respect to exhibit No. 68.

Assignment of error No. XXII complains that plaintiff's counsel, during the closing argument, referred to two exhibits, Nos. 60 and 61, which were plaintiff's sales records covering a period subsequent to the fire. These exhibits had been identified but not offered in evidence. Defendant's counsel told the jurors before they could bring in damages against Ray Gibson for the items west of the company shop they should check exhibit No. 58-A and find the item on that exhibit, and they should then check the inventory, exhibit No. 59, and find the item there, and then, to be completely fair, they should check exhibits Nos. 60 and 61 to see if the item had been sold. Plaintiff's counsel then interrupted the argument and asked to make a record of the fact that exhibits Nos. 60 and 61 were neither offered nor received. Defendant's counsel then stated: "Mr. Knapp: May I state to the jury that at this time we don't know whether Exhibits 60 and 61 have been received in evidence or not, but if they haven't been received then my reference to your use of those exhibits should be ignored and the jury should refer to the testimony with reference to those exhibits." Exhibits Nos. 60 and 61, not having been offered or received, were not examined by or displayed to the jury. We are unable to see how plaintiff could have been prejudiced by the misstatement of defendant's counsel. An error to be sufficient to require the granting of a new trial must be an error prejudicial to the rights of the unsuccessful party. See Owen v. Moore, 166 Neb. 239, 88 N. W. 2d 768.

Assignment of error No. XV is directed to the refusal of the trial court to permit the plaintiff to amend its pre-trial list of witnesses. The pre-trial list of witnesses was furnished August 17, 1964, as directed by the court.

Trial commenced Monday morning, September 21, 1964. The request to amend was made Friday morning, September 25, 1964, the last day of the trial, just before defendant produced his last witness. The proceedings were as follows: "Mr. Wall: Comes now the plaintiff and moves the court for leave to amend the pre-trial list of witness (sic), to add the name of Ralph Grimes thereto, Mr. Grimes' testimony to be limited to his inspection of the electrical system of the building in question after the date of the fire, and his finding of no problems or no unusual circumstances in connection with said electrical system. Mr. Knapp: Show my objection to the motion for the reason that it is contrary to the rules of pre-trial of this court, and for the further reason that the plaintiff has had knowledge and notice of the defense of defective wiring to be introduced on the part of this defendant for many months, and that such evidence of Mr. Grimes would be incompetent, immaterial, and irrelevant, and that the plaintiff was not surprised by this defense. The Court: The objection is sustained and the motion is overruled. Call the jury."

Plaintiff had previously offered a photostatic copy of the pre-trial rules adopted by the district court for Buffalo County, which was admitted into evidence for the record. There is no question as to the power of district judges to promulgate reasonable rules for pre-trial procedure, but in any event this right is recognized by the rules promulgated by this court covering pre-trial procedure. Revised Rules of the Supreme Court of the State of Nebraska, 1963, p. 35. Rules Nos. 7 and 15 of the pre-trial rules for Buffalo County are as follows: "7. At the time of pre-trial there shall be presented to the court a list of names and addresses of all witnesses to be used by both parties, both in their case in chief and in rebuttal, and an outline of matters about which they will be expected to testify. (This does not, of course, include impeachment.) * * * 15. The Judge of the Court for good cause shown in order to prevent

undue hardship may waive any of the above requirements except as to notice." There is no question that for good cause shown to prevent a manifest injustice, amendments should be permitted in any pre-trial procedure. Rule No. 15 so provides. The showing made by plaintiff is clearly insufficient to require a determination that the trial court abused its discretion in refusing plaintiff permission to amend its list of witnesses at that late stage of the proceedings. In this respect we might observe that a fair conclusion to be drawn from this record is that plaintiff's counsel may have been attempting to circumvent the pre-trial rules of the court. To permit amendments when good cause is not shown is to destroy the efficacy of the pre-trial procedure.

We note that rule No. 7 above covers rebuttal witnesses, and observe that in many instances it is not possible to know at a pre-trial conference what witnesses may be needed for rebuttal purposes. We would question the exclusion of a rebuttal witness where the need for his testimony could not have been readily anticipated at the pre-trial conference. In the instant case, however, no proper and sufficient record was made.

For the reasons stated, none of the assignments of error set out by the plaintiff can be sustained. The judgment herein is affirmed.

AFFIRMED.