JOHN GUBALKE, FATHER AND NEXT FRIEND OF JOSEPH GUBALKE, A MINOR, APPELLANT, V. ESTATE OF RUEBEN G. ANTHES ET AL., APPELLEES.

202 N. W. 2d 836

Filed December 15, 1972. No. 38422.

Alfred A. Fiedler of Fiedler & Fiedler, for appellant.

Emil F. Sodoro, Ronald H. Stave, and Richard Jeffries, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This is an action brought by the plaintiff as father and next friend of Joseph Gubalke to recover for personal injury, consisting of the loss of an eye, to Joseph, then 7 years of age, allegedly caused by the negligence of the defendants in installing and maintaining on residential property which they occupied a chain link fence, the upper edge of which was "raw." The injury occurred when Joseph ran or slipped into the fence while playing. At the close of the plaintiff's evidence, the trial court sustained the motion of the defendants for a directed verdict. The errors assigned, insofar as they require consideration on this appeal, are: (1) Refusal of the trial court to submit the case to the jury; and (2) refusal of the trial court to receive into evidence a purported copy of a building permit issued by the city of Omaha authorizing the construction of the fence, and the refusal of the trial court to receive a purported copy of an ordinance of the city of Omaha regulating the construction of fences. We affirm.

The evidence was sufficient to permit a jury to find as follows: The defendants were the occupants on September 13, 1967, the date of the accident, of the property on which the fence was constructed and maintained; the upper edge of the wire mesh extended an

inch or two above the upper horizontal tubing on which the mesh was mounted and this exposed edge consisted of intertwined ends of the wire of which the mesh was made; the tips of the intertwining wires made a "Y" consisting of the sharp ends of two wires; the fence was located on the street side of the defendants' home about midway between the street curb and the side of the house, and on the approximate upper edge of a grassed embankment which rose gently from the curb to the general yard level; and children sometimes walked or played on this embankment and the defendants made no objection. The record does not show whether the fence was located at the defendants' property line or within it. The property occupied by defendants had no sidewalk on the fence side and the embankment does not appear to have been used as a walkway. The evidence further would permit a jury to find that on the evening of the accident in question Joseph and two of his companions were playing 1 block east of the property occupied by the defendants; and that in the course of play, Joseph, while being chased by a companion, ran down the street towards the defendants' house, up the embankment, and into the fence, striking his right eye on one of the exposed ends, injurying it, and necessitating after a period of several months its removal and replacement with a prosthesis.

The evidence disclosed that Joseph knew of the existence of the fence from having played adjacent to it and that he "forgot the fence was there and . . . ran into it." The fence had been there as long as Joseph and an older sister, age 16 at the time of accident, who had lived in the neighborhood since birth, could remember. The actual date of the construction of the fence is not shown. The height of the fence is not shown and cannot be ascertained accurately from the photographic exhibits. Joseph testified that the top of the fence at the time of the accident came about to his eye level or "a little bit down." His height at the time of

the accident is not shown but at the time of trial, November 11, 1971, he was about 4 feet 10 inches tall.

The plaintiff offered into evidence a copy of a building permit signed by one Ray DuBois, as applicant, for a chain link fence upon property purportedly owned by R. G. Anthes at 5069 South 40th Street in Omaha. This is the address the evidence shows is that of the defendants. The permit bears date of 11-10-59. Plaintiff also offered a copy of an ordinance of the city of Omaha making it unlawful to "erect or construct any fence . . . except as provided for." An amendment of this ordinance, upon which the plaintiff relies, has an effective date of 15 days after February 21, 1961, and provides: "Any such fence . . . shall not have barbed selvage at its top, nor be more than four feet in height above the ground level." The amendment permits fences with barbed selvage at the top if the fence is more than 5 feet high and if a permit therefor is obtained from the public safety department. Webster's Third New International Dictionary, Unabridged, p. 2062, indicates that selvage is the cut edge of a material.

We will first deal with the question of the propriety of the ruling of the court on the offer of the building permit and the ordinance. As to the building permit the court sustained the objection on the grounds of lack of foundation. The plaintiff does not discuss his theory of the relevance of the building permit. Our examination of the instrument indicates it does not have relevance to the issues of the case. It does indicate that R. G. Anthes is the owner of the property in question and if we assume it was competent evidence of ownership it is still irrelevant. Other evidence shows the defendants were the occupiers and possessors of the premises. Proof of ownership would at most be merely cumulative. Whatever duties the defendants may have had devolved upon them by virtue of their occupation and possession of the premises. Prosser, Law of Torts (4th Ed.), §§ 57, 59, pp. 351, 364; Restatement, Torts

2d, § 333, p. 183; Presho v. J. M. McDonald Co., 181 Neb. 840, 151 N. W. 2d 451. There was no error in the rejection of the building permit.

An examination of the proffered ordinance reveals that the pertinent provisions of the ordinance became effective, as we have already noted, 15 days after February 21, 1961. The ordinance pertains only to the erection and construction of fences and has no application as to fences constructed prior to the effective date. The date the fence was constructed is not shown by the evidence. It is the usual rule that in order that an ordinance or statute be relevant on the issue of a standard of care, it must have been in effect at the time of the claimed violation and by its terms be applicable to the situation to which it is sought to be applied. Chicago Lumber Co. v. Gibson, 179 Neb. 461, 138 N. W. 2d 832; Cronk v. Iowa Power & Light Co., 258 Iowa 603, 138 N. W. 2d 843; Ellis v. Caprice, 96 N. J. Super. 539, 233 A. 2d 654; Akins v. County of Sonoma, 67 Cal. 2d 185, 60 Cal. Rptr. 499, 430 P. 2d 57; Klein v. Montgomery Ward & Co., 235 Ore. 315, 384 P. 2d 978. The court did not err in the rejection of the ordinance as evidence.

Was the evidence otherwise sufficient to present a jury issue? Neither party cites a Nebraska case or a case from any other jurisdiction which has direct application. The Nebraska cases which touch upon the question of the duty of an owner or occupier of land to children coming upon the premises lawfully or otherwise are not numerous. They seem in general to be in accord with the rule laid down in Restatement, Torts 2d, §§ 339, 343B, pp. 197, 222; Chicago, B. & Q. R.R. Co. v. Krayenbuhl, 65 Neb. 889, 91 N. W. 880, 59 L. R. A. 920. In the above case the court said that in the determination of the question of negligence, regard must be had to the character and location of the premises, the purposes for which they are used, the probability of injury therefrom, the precautions necessary to prevent such injury, and the relation such precautions bear to

the beneficial use of the premises. If under all the circumstances the owner or occupier omits such precautions as a man of ordinary care and prudence would take under the circumstances, he is negligent and ordinarily the question of negligence is for the jury. See, also, Ramirez v. Chicago, B. & Q. R.R. Co., 116 Neb. 740, 219 N. W. 1; Tucker v. Draper, 62 Neb. 66, 86 N. W. 917, 54 L. R. A. 321; Krummack v. Missouri P. Ry. Co., 98 Neb. 773, 154 N. W. 541; Spence v. Polenski Bros., Schellak & Co., 110 Neb. 56, 193 N. W. 101; Richards v. Connell, 45 Neb. 467, 63 N. W. 915.

The standard of the occupier's duty, at least insofar as it pertains to children of tender years, does not depend upon whether the child is an invitee, licensee, or trespasser. Restatement, Torts 2d, § 343B, p. 222; Chicago, B. & Q. R.R. Co. v. Krayenbuhl, supra. The status of the child is merely one of the factors to be taken into consideration.

In Restatement, Torts 2d, § 339, p. 197, the applicable principles are stated in the following language:

"Artificial Conditions Highly Dangerous to Trespassing Children

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are

slight as compared with the risk to children involved, and

"(e)  the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

The evidence supports the conclusion that the defendants would know the nature of the upper edge of the fence and for present purposes we assume they had such knowledge. The question we must answer is whether the condition was one which offered an unreasonable danger of serious bodily injury to children and a danger which was reasonably to be anticipated by the defendants. If not, then there is no jury question and no liability.

Each case depends upon its own facts. "The stress here is upon 'unreasonable.' There is virtually no condition upon any land with which a child may not possibly get himself into trouble. He may choke to death upon a green apple, pick up a stick and poke it into his eye, or have his skull fractured by a rock found and thrown by his companion. Unless the possessor is to shoulder the impossible burden of making his land completely 'child-proof,' which might mean razing it to the bare earth, something more is called for than the general possibility of somehow coming to some harm which follows the child everywhere throughout his daily existence." Prosser, Law of Torts (4th Ed.), § 59, p. 369.

Under the facts of this case and considering the nature of the claimed dangerous condition, its location, and the child's status, it seems clear to us there was a low degree of both probability of harm and probability of serious injury. We hold as a matter of law that condition (b) of Restatement, Torts 2d, § 339, p. 197, is not supported by the evidence. The defendants were not guilty of any violation of duty to the plaintiff.

It may be true it could be reasonably anticipated that a child playing near the fence or attempting to climb

it might sustain torn clothing or a scratch, but it is not reasonably to be anticipated that a child of the age of 7 years who knows of the existence of the fence, even though he may not be conscious of the pointed upper edge, will run full tilt into the fence and suffer such serious injury as the loss of an eye. Such injury could occur under the circumstances if the obstacle had been a picket fence, or a hedge, the branches of which by reason of trimming were sharp and stiff.

This case is not unlike Mail v. M. R. Smith Lumber & Shingle Co., 47 Wash. 2d 447, 287 P. 2d 877, where the child suffered the loss of an eye by in some manner striking his eye on the tip of a pike pole used in handling logs on a millpond; or Massino v. Smaglick, 3 Wis. 2d 607, 89 N. W. 2d 223, where the child lost an eye at the site of a building under construction when a piece of shingle trimmed by carpenters was thrown from the roof of a building by another child and struck the plaintiff. Similar also is Morril v. Morril, 104 N. J. L. 557, 142 A. 337, 60 A. L. R. 102, where a child playing ball fell against an open garage door and lost an eye when he struck it on a defective door latch. The wind had blown the door open because the latch was defective. The defendant had knowledge of the defective latch and had intended to repair it.

Diglio v. Jersey Central Power & Light Co., 39 N. J. Super. 140, 120 A. 2d 650, involved a situation somewhat similar to our present case and the court affirmed a verdict for the plaintiff who was climbing the fence and was injured. In that case, however, the defendant permitted its yard to be used as a playground and the fence was so constructed as to invite climbing. We do not, however, think the case is sound and decline to adopt its holding.

AFFIRMED.

BOSLAUGH, J., dissenting.

It would seem to me that in a proper case the maintenance of a fence with "barbed selvage" or the sharp

ends of wire extending above the upper rail would present a question for the jury on the issue of negligence. See, Barr v. Green, 210 N. Y. 252, 104 N. E. 619; Marton v. Jones, 44 Cal. 299, 186 P. 410; Skaling v. Sheedy, 101 Conn. 545, 126 A. 721, 36 A. L. R. 540.