JOSEPH H. McGINTY, APPELLANT, v. GERALD V. McGINTY ET AL., APPELLEES.

237 N. W. 2d 855

Filed January 22, 1976. No. 40097.

George H. Moyer, Jr., of Moyer, Moyer & Egley, for appellant.

Sandra K. Olejniczak, for appellees.

Heard before SPENCER, BOSLAUGH, and BRODKEY, JJ., and COLWELL and RIST, District Judges.

COLWELL, District Judge.

This is an action in equity for an accounting and to set aside a quit claim deed executed September 20, 1968, by plaintiff Joseph H. McGinty, a single man, then aged 64 years, conveying 95.58 acres of land in Dakota County, Nebraska, to his son, Gerald V. McGinty, and Josephine McGinty, husband and wife. The action was commenced May 8, 1969. Trial to the court was had beginning February 20, 1975, after several delays occasioned by plaintiff. The petition alleges failure of consideration, fraud, false representation, and error in description. Plaintiff contends he intended to convey only 1 acre as a gift. Defendants claim the agreed consideration was $30 per acre, of which $2,000 had been paid. The trial court found for defendants and ordered them to pay plaintiff $867.40, the balance of the consideration, plus interest. We affirm.

We hear the matter de novo subject to the condition that when the evidence on material questions of fact is in irreconcilable conflict this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying. Russo v. Williams, 160 Neb. 564, 71 N. W. 2d 131.

Beginning in 1966 dialogue began between the parties relating to defendants moving from California to South Sioux City, Nebraska, and plaintiff conveying a part of his farm to them. In August 1967, defendants visited plaintiff in Nebraska, and they then had further similar conversations that plaintiff would convey to the defendants that part of his farm lying north of the power line. These conversations generally included references to defendants using the land for a farm, building a home on the land, and building a boat dock or marina. Gerald did represent in general terms that he would assist plaintiff in his farm work, all without reference to either time or particulars. Defendants' evidence is that plaintiff offered to give them the land north of the power line, and, later, plaintiff agreed to accept $30 per acre for that land. The exact acreage was unknown at the time since the survey was not made until the next year. No written agreement or memorandum of agreement was made by the parties. Defendants returned to California and sold their home in December 1967.

In the fall of 1967 Josephine McGinty wrote two letters to plaintiff which are in part: "Norwalk, Calif. * * * Dear Dad: We made it back to Los Angeles just fine. * * * Sure wish you could have come back with us. * * * We have $10,000.00 cash so far and we can get more if we need it. We're ready to start building around the first of June, 1968. So get your paper and pencil out. Where are we going to start first? The Motel? The snack bar and Tavern? The Landing? * * * You know what you want and the best place for

it. I can be your secretary and get the bids, do the running around and make the different contacts that would be necessary. * * * What do you think? How much cash do you think it will take? We'll bring our two boats back this next trip. We can rent them out for so much an hr. Well Dad, write us what you think we need. If we work it right, we ought to make a living, right? We're trying to think of a good name to call it. How's this for a starter: * * * Lets make 1968 our big year?! Love Jerry, JoAnn. P. S. Are you with us? On this? We are serious?! Are you?

"Oct. 16, 1967. Dear Dad, We were real glad to hear from you. * * * In the mean time could you check to see or you know what has to be done as far as clearing and grading so that we can put in a boat landing or dock and Bar with Courts for trailers and etc. or Motel (you know). * * * Jerry wants to know what you think about getting that farm really going. Do you think we can make a living off it? * * * Jerry doesn't really want to have a job in the city part-time or otherwise. I think he just wants to put everything he's got in to the farm—and with a little effort and time you'll have quite a ranch and farm and Boat Palace Let's say by 1970. * * * Jerry doesn't know how Mike, Paul, & Jane will feel about us coming back there with you. He doesn't want them having hard feelings about this. Do you think they will? All we want to do is make a living. * * * How about you calling us on the telephone, * * * we can square away things you want to know about and us too. Things that can be done back there now and while we are still here and will send you the money that you need for these things as you have them done. Do you follow me?! Like the work you suggested in your letter — road — river — both ends of the farm. We'll pay for it. * * * Love, Jerry, Jo-Ann and Children."

Josephine McGinty explained these letters and the proposals contained therein as a "pipe dream" on her

part. The evidence was that the area was not suitable for the construction of a boat marina except at great expense.

During the winter of 1967-68 defendants hired bulldozing work done on the 95.58 acres, all with the plaintiff's knowledge and without objection. In March 1968, Josephine returned to South Sioux City to arrange for her children to attend school there the next fall. While there, she again talked to plaintiff about the transaction between the parties and it was agreed that a survey would be made. After she returned to California, defendants talked to plaintiff by telephone and it was agreed that defendants would send $2,000 to plaintiff as part payment for the farm, which was done and plaintiff accepted that sum in April 1968. Plaintiff first contended that the $2,000 was a gift and, later, claimed that it was a loan.

In August 1968, defendants moved from California to South Sioux City and lived for a time in a trailer near plaintiff's house. With plaintiff's knowledge, an official survey was made of that part of the farm north of the power line. Plaintiff assisted the surveyor in placing stakes and poles. A copy of the official survey was furnished to plaintiff showing that the tract contained 95.58 acres. Defendants paid for the expense of the survey.

A few days prior to September 20, 1968, plaintiff and defendants went to the office of Francis J. Kneifl, an attorney of South Sioux City, Nebraska, who was a brother of Josephine McGinty. The purpose was to prepare a deed. Plaintiff requested that his own attorney, Mark J. Ryan, South Sioux City, Nebraska, be employed for this purpose. The parties then went to the office of Mark J. Ryan where plaintiff requested that a quit claim deed be prepared conveying the property described in the copy of survey which was furnished to Ryan conveying that property to defendants. The deed was not prepared that day. Two or three days later

plaintiff was informed that the deed was ready for execution. On September 20, 1968, plaintiff and Josephine went to Ryan's office where the deed was exhibited to both of them, and Ryan read the instrument to plaintiff. Plaintiff signed and acknowledged the quit claim deed in the presence of Josephine and attorney Ryan. The deed was recorded on October 10, 1968. The description in the deed is by metes and bounds the same as set out in the official survey. The deed recites that the consideration was "One dollar and other valuable consideration," and particularly recites "said land containing 95.58 acres more or less." Defendants paid for Ryan's services. At the time the deed was delivered, Josephine offered to pay plaintiff the balance of the purchase price. Plaintiff declined, saying that the defendants would need that money in building their house. Shortly after the deed was delivered, the defendants began constructing a five bedroom house on the land. In the years 1967, 1968, and 1969 defendants paid more than $7,000 for land leveling and dirt moving. The house was located in the southeast part of the tract conveyed at a point more than 1,400 feet from the Missouri River near the high water bank line. Attorney Mark J. Ryan was deceased at the time of trial.

Plaintiff denies any agreement or intentions on his part to convey the 95.58-acre tract to the defendants and, on the contrary, states that he agreed and intended to convey to them as a gift a 1-acre tract of land on which to build a house. There is nothing in the record showing any source or suggestion of a legal description of that 1-acre tract. Plaintiff claims that he first learned of the description contained in the deed in February 1969.

"To maintain an action for rescission because of false representations the party seeking such relief must allege and prove what representations were made; that they were false and so known to be by the party charged with making them or else were made without knowledge

as a positive statement of known fact; that the party seeking relief believed the representations to be true; and that he relied and acted upon them and was injured thereby. * * * Fraud is never presumed, but must be established by the party alleging it by clear and satisfactory evidence." Russo v. Williams, *supra*.

In 37 Am. Jur. 2d, Fraud and Deceit, § 57, p. 86, it is stated: "The general rule * * * is that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on representations or statements which involve mere matters of futurity or things to be done or performed in the future." It is further stated therein at § 62, p. 96: "Thus, as between parties at arm's length, a representation of intention as to future events, which was not falsely made with intent to deceive, does not afford a basis for rescission of the contract induced by the representation."

The transaction here had a history of more than 2 years; most of that time defendants were in California. Up to February 1969, plaintiff and defendants enjoyed a normal, friendly family association with no showing in the evidence that the defendants either used or attempted to use their family relationship to influence plaintiff in the transaction. The description of the 95.58 acres was openly determined by the official survey and a copy of the survey was furnished to plaintiff. Plaintiff had his own attorney prepare the conveyance from the description contained in the survey furnished by him.

As to the claimed misrepresentations made by defendants concerning the use of the land for farming and building a boat dock or marina, particularly as contained in Josephine's letters, these representations were material; however, they related to future acts, plans, and conduct of defendants, and there is no evidence that they were intended by defendants, or either of them, to defraud plaintiff; they were not statements of present or preexisting facts; and the evidence is that plaintiff did not rely thereon as shown by his own testi-

mony on direct examination: "Q Do you recall anything about what was said in the course of the conversation? A No. Q Do you have any recollection of any conversations with your son and daughter-in-law about their returning here to Nebraska to live in 1967? * * * A Yes. Q Do you remember where that conversation took place, Mr. McGinty? A I believe that's out on the farm. * * * Q Would you relate to the best of your present recollection what you said and what your son and daughter-in-law said in the course of this conversation? A I agreed with them about coming back to make a home in Nebraska. * * * Q Joe, you have to say what they said and what you said, do you understand? Tell us their words they used, not exactly but in substance. A Well, in substance they was coming back here to make a living, they was going to build a home out on the farm or near the farm and they had a boat and they was going to put a boat in the river and a little boat dock there and all live and enjoy life I figured."

Plaintiff's claim that the $2,000 paid to him by defendants was not payment of a part of the purchase price and his claim that he intended to convey only 1 acre of land both lack credibility, and the evidence in support thereof does not meet plaintiff's burden of proof.

There is no fraud here.

Plaintiff claims the consideration of $30 per acre was inadequate and he offered expert evidence that the land had a value of $350 per acre as commercial land abutting on the river and near to a city.

"* * * mere inadequacy of consideration is not sufficient, even in equity, to warrant the setting aside of a contract." Sic v. Loup River Public Power Dist., 136 Neb. 506, 286 N. W. 700.

The evidence was that the 95.58 acres were subject to overflow and in 1969 the river had backup water to within a few feet of defendants' house. About 15 acres of the tract was tillable and there was some limited

pasture. Most of the land was grown up in brush, trees, and willows. We conclude that, as between these parties and considering the attending circumstances, $30 per acre was the consideration agreed upon by the parties and was neither inadequate nor inequitable.

Plaintiff claimed as a part of the consideration that Gerald agreed to assist plaintiff in his farm work and that Gerald failed to do so. At most the evidence was that Gerald made some general representations that he would help his father, which Gerald did do up to a time in 1969, when plaintiff acquired a housekeeper which caused a strained relationship between them. Plaintiff failed to prove that this claimed error was a part of the consideration for the conveyance.

Error is claimed that a copy of an appraisal made by the Home Federal Savings & Loan Association, Sioux City, Iowa, was admitted into evidence without foundation showing that the land had a value of $100 per acre. This was error without prejudice to the plaintiff and is further disposed of by Miller v. Banner County, 127 Neb. 690, 256 N. W. 639: " 'In a case tried to the court, the presumption obtains that the court, in arriving at a decision, will consider such evidence only as is competent and relevant, and this court will not reverse a case so tried because other evidence was admitted.' "

Plaintiff claims error in that the court limited his cross-examination of Josephine McGinty concerning the issue of building a marina. The record shows the following: "Court: Well, I think we have gone into it far enough anyway. You have established your record." The limiting of cross-examination is within the discretion of the trial court. See Chicago Lumber Co. v. Gibson, 179 Neb. 461, 138 N. W. 2d 832.

"Where a court of equity has obtained jurisdiction of a case for any purpose, it will retain it for all, and will proceed to a final determination of the case, adjudicate all matters in issue, and thus avoid unnecessary litigation." Zwink v. Ahlman, 177 Neb. 15, 128 N. W. 2d 121.

The plaintiff has failed to sustain his burden of proof. The court properly denied plaintiff's prayer for rescission and accounting and ordered defendants to pay plaintiff $867.40 and interest.

AFFIRMED.