PHILIP M. DAVIS, BY STEVEN PAUL DAVIS, HIS FATHER AND NEXT FRIEND, APPELLANT AND CROSS-APPELLEE, V. IVAN CUNNINGHAM, APPELLEE AND CROSS-APPELLANT.

241 N. W. 2d 343

Filed April 28, 1976. No. 40258.

Philip T. Morgan, for appellant.

James A. Beltzer of Luebs, Tracy, Dowding, Beltzer & Leininger, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

NEWTON, J.

In this action recovery is sought for personal injuries sustained by Philip M. Davis, a 3-year-old boy, on his grandfather's farm. Verdict and judgment were for plaintiff for $1,800. Plaintiff has appealed on the ground the verdict was inadequate and the defendant grandfather has cross-appealed on the ground that negligence does not appear. The judgment is reversed and the cause dismissed.

Defendant's daughter Lana, with her new baby and son Philip, were visiting in defendant's farm home. Also in the farm home were Lana's brothers and sisters, including Julie 12 years of age and Matt who was 8. Lana gave permission for the three children to go out and play in the sprinkler with the understanding that Julie and Matt would supervise Philip. Julie and Matt knew of the potential dangers in playing with farm machinery. On the farm lot adjacent to the lawn was a machine referred to as an irrigation ditcher. It was constructed on two small wheels with a tongue at the front end and

a V-shaped blade at the rear. It was evidently more or less balanced on the two wheels as the tongue was down on the ground but Philip managed to pull the blade portion down and the tongue up. The ditcher weighed about 800 pounds and was heavier in the rear or blade portion. Philip's father, who is not a farmer, had observed the machine as it was sitting the day before the accident but thought nothing of it. Philip ran over, swung on a cross rod between the V-shaped blades, and pulled it down on himself. Julie and Matt lifted the machine off Philip. Philip was injured and removal of a kidney was necessary.

The judgment is obviously inadequate in view of the injuries Philip received, but the primary question is that of liability. It is generally conceded that the liability of a possessor of land for injuries to infants is the same whether or not the child is a trespasser. The rule generally followed is that found in Restatement, Torts 2d, § 339, p. 197. It was followed in Gubalke v. Estate of Anthes, 189 Neb. 385, 202 N. W. 2d 836. The rule is as follows: " 'A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

" '(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

" '(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

" '(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

" '(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

" '(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.' "

For liability to attach, *all* phases of the rule must be present. The condition must be one which involves *"an unreasonable risk of death or serious bodily harm"* to a child, and one which should be foreseen. (Emphasis supplied.)

The condition or instrumentality in question must be one that is inherently or unusually dangerous to children. As was stated in Gubalke v. Estate of Anthes, *supra*: "The question we must answer is whether the condition was one which offered an unreasonable danger of serious bodily injury to children and a danger which was reasonably to be anticipated by the defendants. If not, then there is no jury question and no liability."

In the present instance we are dealing with an ordinary, stationary, and innocuous farm implement. It obviously is not an inherently or unusually dangerous object. The same is true of an ordinary farm tractor although a child may climb up on it, fall off, and break his neck. As was stated in Gubalke v. Estate of Anthes, *supra*, quoting Prosser, Law of Torts (4th Ed.), § 59, p. 369: " 'The stress here is upon "unreasonable." There is virtually no condition upon any land with which a child may not possibly get himself into trouble. He may choke to death upon a green apple, pick up a stick and poke it into his eye, or have his skull fractured by a rock found and thrown by his companion. Unless the possessor is to shoulder the impossible burden of making his land completely "child-proof," which might mean razing it to the bare earth, something more is called for than the general possibility of somehow coming to some harm which follows the child everywhere throughout his daily existence.' " "Owner of real property is not an insurer of safety of persons who may come upon his land as invitees, licensees or trespassers, nor is he under a

duty to make his lawn 'child-proof.'" Martinelli v. Peters, 413 Pa. 472, 198 A. 2d 530.

We said in Haden v. Hockenberger & Chambers Co., 193 Neb. 713, 228 N. W. 2d 883: "The attractive nuisance doctrine does not apply to machinery in a static condition unless there is evidence that the machinery is enticing and inherently dangerous to indiscriminating children of tender years."

It is said that the ditch digger was dangerous because the heavier end was left tilted in the air. Children might well have pulled it down many times without sustaining a serious injury. For that matter, the older children playing on the premises might well have tilted the other end up had it been left with the tongue up and the heavier blade down. Had that occurred, could it still be said that the defendant should have foreseen the likelihood of an accident? Foreseeability is an essential element of the rule. Unless the situation presents an abnormal or unusual danger, the ordinary reasonable person would not sense nor foresee any danger.

The attractive nuisance doctrine is an aberration or abnormality in the law of negligence and departs from the usual rules. As a result it is considered that it should not be extended in its application although this has occurred in a number of jurisdictions. As stated in 65 C. J. S., Negligence, § 63 (73), p. 810: "The tendency of the courts is to limit rather than to extend the attractive nuisance doctrine." See, also, Brown v. Reliable Iron Foundry, Inc., 174 Cal. App. 2d 294, 344 P. 2d 633; Appling v. Stuck (Iowa), 164 N. W. 2d 810; Hanners v. City of Ashland (Ky. App.), 331 S. W. 2d 729; Beasley v. Guerriero (La. App.), 123 So. 2d 774.

Under the circumstances of this case, it is difficult to believe that a reasonable person would have foreseen or anticipated danger to the child or an accident involving "serious bodily harm." Ordinarily under such circumstances the child either would not be injured or would suffer nothing worse than a minor bruise. Neither

the child's grandfather nor father foresaw any danger of injury to the child from the static ditcher.

The judgment of the District Court is reversed and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.

BRODKEY, J., concurring.

I concur in the result reached in the majority opinion in this case, and in the discussion therein so far as it pertains to the application of the attractive nuisance doctrine. However, I think it should be made clear that liability for injuries to children is not restricted to the application of the attractive nuisance doctrine, but may also arise, under appropriate circumstances, under ordinary rules of negligence. It is not a condition precedent to liability that the particular machine or instrumentality involved be a dangerous instrumentality. Even a completely safe machine may be used in a negligent manner, with resulting liability for tortious injuries to children.

CLINTON, J., dissenting.

I respectfully dissent for the reason that I believe the evidence justified submission to the jury of the issue of the defendant's negligence and would therefore affirm the jury finding on liability, but, because the damage award was clearly inadequate, I would remand for a new trial on the issue of damages only.

At the expense of some repetition of facts contained in the majority opinion, I state my view as follows:

The evidence shows that Philip and his parents were guests at the farm home of the defendant. The family had begun their visit the day before the accident. On the day of the incident, the plaintiff was permitted by his parents to play with the sprinkler on the lawn adjacent to the farm residence. Philip was at that time placed in the charge of his aunt, age 12, and his uncle, age 8, who were playing with him.

At that time in the farmyard and immediately adjacent to the lawn, there was located an irrigation ditcher

belonging to the defendant. It had been placed in that location the day preceding the accident by a neighbor who had returned the ditcher after borrowing it. The ditcher might be described as a two-wheel sulky consisting of the two wheels, a rectangular inverted U axle with a single bar frame clamped to and crossing the axle at right angles. Attached at the rear of the single-bar frame is the ditcher, a large V-shaped, two-bladed plow. Between and connecting the two blades of the plow and near the lower edge thereof are two steel bars, the evident purpose of which is to strengthen the plow and to assure that the two blades maintain their relative positions. At the front end of the frame is a straight cantilever hitch. The evidence shows that when the ditcher is not in use, it may stand either with the plow in the air and the hitch end on the ground, or vice versa. The evidence further shows that the weight distribution of the machine is such that if the blades are in the air only a "very little" pressure would be required to bring the blades to the ground. On the other hand, if the blades are resting on the ground it would take "a considerable amount of pressure" on the hitch end of the frame to put the blades in the air. The machine itself weighs about 800 pounds and the bulk of the weight is in the blades. When the blades are in the air, the strengthening bars are within the reach of a small child.

Shortly before the accident the defendant observed the children playing in the yard and noted the location and position of the ditcher. He then left to take a load of corn to the elevator. During his absence the accident occurred in the following fashion. Philip ran over to the ditcher, grabbed one of the strengthening bars, and started swinging. The ditcher came down and pinned him to the ground. Philip's 8-year-old uncle, who had followed Philip to the machine, attempted to lift it but could not. The 12-year-old aunt, who had been watering

a tree nearby, then came and the two children were able to lift the plow from Philip.

The record shows that after the accident the defendant stated to his daughter, Philip's mother, that the accident was "senseless," that the machine should not have been where it was, and that all that it would have taken to prevent it would have been to, in the words of Philip's mother, "flip" the plow to the ground.

The defendant asserts that the evidence was insufficient as a matter of law to establish any negligence on his part and therefore there was no jury question. He cites and relies upon Haden v. Hockenberger & Chambers Co., 193 Neb. 713, 228 N. W. 2d 883; and upon the contention that the accident was not reasonably foreseeable. In the cited case the defendant had parked a dragline adjacent to a lake or pond on land owned by it, and the plaintiff, a 17-year-old boy, was injured when he used the dragline as a diving platform. We there affirmed a directed verdict for the defendants and said that machinery in a static condition is not inherently dangerous. That case was properly decided and clearly stated the correct principles. But we are here confronted with a completely different set of evidentiary facts which distinguish this case from that relied upon by the defendant. These are: (1) The defendant's actual knowledge of the presence of the child and of the child's tender age. (2) The extremely unstable character of the ditcher's position. (3) The defendant's knowledge of the machine's characteristics and its proximity to the area where the child was playing. (4) The inviting (to a small child) character of the strengthening bars when the blades were in the elevated position. (5) The relative lack of utility in positioning the blades in the elevated position and the ease with which the position could be changed to a relatively safe one.

An examination of the holdings of numerous courts that have had occasion to define the duty to a child of a possessor of a chattel that is likely to tip or fall in-

dicates that key factors to be considered are the tender age of the child, the unstable characteristic of the chattel, and the known presence or the likelihood of the presence of children and their inability to appreciate the hazard because of tender age. See the following authorities: Kopplekom v. Colorado Cement Pipe Co., 16 Colo. App. 274, 64 P. 1047 (top-heavy cement pipe standing on side); Morse v. Douglas, 107 Cal. App. 196, 290 P. 465 (two-wheeled iron tar vat easily tipped); American Ry. Express Co. v. Crabtree, 271 F. 287 (heavy iron wheel leaning precariously); Jorgenson v. Crane, 86 Wash. 273, 150 P. 419 (mobile two-wheel scraper on school grounds); Reichvalder v. Borough of Taylor, 322 Pa. 72, 185 A. 270 (mobile four-wheel scraper near playground); Allen v. Silverman, 355 Pa. 471, 50 A. 2d 275 (heavy metalic cylinder movable by the slightest jar, located on slope); Bergman v. Feitelowitz, 278 N. Y. 620, 16 N. E. 2d 127 (heavy, not fastened down, stone pot).

It is my view that reasonable minds might draw different inferences as to whether the defendant ought to have foreseen the possibility of accident and injury under the evidence in this case. Where reasonable minds may draw different conclusions from the evidence, it is within the province of the jury to decide the issues of fact and on review the Supreme Court may not set aside the verdict in such a situation. Libbey-Owens Ford Glass Co. v. L & M Paper Co., 189 Neb. 792, 205 N. W. 2d 523.

SPENCER and MCCOWN, JJ., join in this dissent.