HELEN VON DOLLEN, APPELLANT, V. ERNEST E. STULGIES, DOING BUSINESS AS STULGIES CONSTRUCTION COMPANY, ET AL., APPELLEES.

128 N. W. 2d 115

Filed May 1, 1964. No. 35589.

Schrempp, Lathrop & Rosenthal, for appellant.

Joseph H. McGroarty, Larry E. Welch, Doerr & Doerr, and Herbert E. Story, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

WHITE, C. J.

Plaintiff, after taking two or three steps inside a house under construction, was injured by stacked wallboard which fell on her foot. She sues the general contractor and the supplier of the wallboard. At the close of the plaintiff's evidence, the trial court directed a verdict for the defendants, and the plaintiff appeals.

The principal question involved in this case is whether, under the circumstances, the defendants, or either of them, owed any duty to the plaintiff to keep the premises safe. This, in turn, involves a determination of whether the plaintiff was an invitee or a mere licensee on the premises at the time of the accident.

There is little dispute about the essential facts of this case. The plaintiff is entitled to have all conflicts in the evidence resolved in her favor and to have the benefit of all reasonable inferences.

Plaintiff's sister, Mrs. Powell, a widow with two children, had been living in Minnesota, and desired to return to Omaha to live. During the period from March 1960 until June 1960, plaintiff, by means of phone calls and mailing some pictures and other information, assisted her sister in completing negotiations for the building of the house in which the accident occurred. Mrs. Powell came to Omaha during this period, bought the lot from Arringdale (King Realty Company), and entered into a contract with Arringdale for the construction of the house. Arringdale (King Realty Company) then contracted with the defendant Stulgies for the construction of the residence, and the construction commenced in June 1960. Mrs. Powell returned to Omaha about June 10, 1960, to live permanently. The evidence shows that the house was being constructed for Mrs. Powell, that it belonged to her, and that she alone made, and had the right to make, final decisions regarding construction. Mrs. Powell had no control over Stulgies, except through Arringdale, the company with which she had the contract. The record shows that the plaintiff had no contract with Stulgies, had no control over any of these matters, had never attempted to exercise any control over the construction, and that Arringdale or Stulgies never considered or thought that she did. The evidence does show that Mrs Powell consulted her sister, the plaintiff, many times, talked with her about the construction, and received advice from her

on a voluntary basis. The evidence shows that the contractor Stulgies was responsible only to King Realty Company and not in any manner to the plaintiff.

From June 10, 1960, until August 21, 1960, the date of the accident, Mrs. Powell and the plaintiff drove by the premises numerous times but actually visited the premises only four or five times. Mrs. Powell, in the company of the plaintiff, talked to Stulgies two or three times, one of these occasions being after the accident. Neither Mrs. Powell nor the plaintiff made any suggestion of changes in the construction on the one or two visits before the accident. Mrs. Powell inquired only as to the location of the closets. They had some conversation about the painting, but it appears that this conversation took place after the accident. At no time does it appear that the plaintiff made any suggestions or inquiries, gave any orders, or carried on anything more than a casual conversation with Stulgies. Her capacity on these trips is perhaps best characterized by her statement in her deposition that she just "rode along." The plaintiff testified that she had no financial interest in the house, that she was on the construction site with Mrs. Powell either once or twice before the accident but she never gave any suggestions or anything, that she had no dealing with Stulgies, the contractor, that in the first conversation Mrs. Powell asked Stulgies about the location of the closets and that was all, and that she can't recall what the nature of the conversation was the second time that she was present with Mrs. Powell and they talked with Stulgies on the construction site. The plaintiff further testified that her sister was the owner of the house and that her sister had the final "say so" on any decisions although she always talked matters over with the plaintiff.

On Saturday, August 20, 1960, the defendant, Southern Lumber and Coal Company, Inc., delivered about 80 sheets of wallboard, 10 sheets, 4 by 8 feet by ½ inch, and 70 sheets, 4 by 12 feet by ½ inch, weighing 64

and 96 pounds per sheet, respectively, to the construction site. Some of these sheets were stacked lengthwise on end against the north wall of the house east of and close to the north door. There is no direct evidence as to the number of pieces of wallboard or as to the slant or distance the bottom of the stack was from the north wall. There is no evidence as to the actual delivery or stacking of the wallboard. No employee of the supplier or the contractor who could have had knowledge of these matters was called to testify. Stulgies had no knowledge of the delivery of the wallboard until the invoice was delivered later and neither he nor any employee of his was on the premises on Saturday or Sunday, August 20 or 21, 1960.

On Sunday afternoon, August 21, 1960, Mrs. Powell, Mr. Greek, a neighbor, and the plaintiff visited the premises to view the progress of the construction and to measure a window for a traverse rod. Mrs. Powell opened the north door with a key Stulgies had told her was there, stepped inside, and was followed by Greek and the plaintiff. Thirty-eight inches to the south of the door and extending from the west wall was a built-in planter with a partition for flowers. Between the east end of the planter and the south edge of the stacked wallboard there was an opening just wide enough for Greek to go through. Greek's body was 16 inches wide, and he passed through the opening without slanting his body and without touching the planter or the wallboard. The plaintiff who was immediately behind Greek did not touch the wallboard as she entered a few steps inside the house, and as she passed the wallboard, it fell to the south scraping her right leg and pinning her right foot to the floor. Greek had to lift the wallboard off of her foot.

The plaintiff argues that she was an invitee, and that the defendants owed an affirmative duty of reasonable care to keep the premises safe and to anticipate her presence. The defendants argue that the plaintiff was

a mere licensee on the premises with the permission or consent of the possessor, and that their only duty was to not willfully and wantonly injure her. Both parties cite the same authorities to sustain their positions. Lindelow v. Peter Kiewit Sons', Inc., 174 Neb. 1, 115 N. W. 2d 776; Malolepszy v. Central Market, Inc., 143 Neb. 356, 9 N. W. 2d 474; Kruntorad v. Chicago, R. I & P. Ry. Co., 111 Neb. 753, 197 N. W. 611.

In Lindelow v. Peter Kiewit Sons', Inc., *supra,* we re-examined and comprehensively stated the applicable rules and definitions. The law places those who come upon the premises of another in three classes: Invitees to whom an affirmative duty exists to anticipate their presence and keep the premises safe; a licensee who comes on the premises by virtue of the possessor's consent, whether given by invitation or permission, to whom no duty is owed except not to willfully or wantonly injure; and, last, trespassers who are neither suffered nor invited to enter. Lindelow v. Peter Kiewit Sons', Inc., *supra;* Malolepszy v. Central Market, Inc., *supra.*

It was pointed out in Kruntorad v. Chicago, R. I & P. Ry. Co., *supra,* that there is much confusion in the cases because of failure to distinguish between a license and an invitation and this, in turn, has developed from a failure to properly characterize the terms "sufferance," "permission," "consent," and "express invitation," as they relate to the relationship between the parties. In Lindelow v. Peter Kiewit Sons', Inc., *supra,* we clearly held that an express invitation or consent that a person be on the premises does not by itself make a person an invitee. In that case, we said: " 'The duty of the owner toward an invitee is to exercise reasonable care to keep the premises in a safe condition, but a licensee takes the premises as he finds them, for the only duty of the occupier to a licensee is to give notice of traps or concealed dangers.' " We further said: "In Restatement, Torts, § 330, p. 893, the general rule defining a

licensee is given as follows: '*A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission.* * * * A license may be given by any words, either written or spoken, which manifest consent.' * * * 'An "invitee" is defined as a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant *on the business of the owner* or occupant or for their mutual advantage.' 65 C. J. S., Negligence, § 43(1), p. 508. The same rule appears to be recognized in Restatement, Torts, § 332, p. 897. * * * The authorities cited and the cases clearly hold however that a license may result from an invitation making one a licensee or, on the other hand, may be such as to make one an invitee. *The real difference is the purpose of the invitation. If the invitation relates to the business of the one who gives it or for the mutual advantage of both parties of a business nature, the party receiving it is an invitee. If it is an invitation for the convenience, pleasure, or benefit of the person enjoying the privilege it is only a license and the person receiving it is a licensee.* * * * It appears from an examination of the authorities that in order to be an invitee on the premises of another the invitation of the owner or occupant must be related with the business of the owner or occupant or to their mutual advantage." (Emphasis supplied.)

As was pointed out in the above case, a social guest in a home coming by express invitation is a mere licensee. See 38 Am. Jur., Negligence, § 117, p. 778.

Giving maximum reach to the plaintiff's testimony, a close examination of her testimony reveals that her purpose was solely to accompany and assist her sister as a guest on the premises. It is true that the testimony reveals that she performed this function continually and over quite a period of time. But, the volume of her assistance cannot ripen it into an invitation by the contractor Stulgies to enter for a business purpose that

was to their mutual advantage. By her own testimony she had no contract with Stulgies nor did she have any authority over him. Her visit on the day of the accident was unknown to Stulgies and could not possibly have been of any benefit to him. She, like Greek, the neighbor, accompanied Mrs. Powell to see what work had been accomplished and assist her sister as a companion and visitor. Neither this visit, nor any of her visits, had any relationship to any business or matter of mutual advantage betwen the plaintiff and Stulgies. But beyond this, Stulgies, as possessor and in control of the premises, was the person from whose acts, words, and conduct must be inferred the scope and nature of the invitation. There is no evidence in the record that will support an inference that any invitation, within the scope of the announced rule, was ever given by Stulgies to the plaintiff, either express or implied. She was along with Mrs. Powell on perhaps two occasions, and the conversation was about where the closets were located. There is no evidence as to any conversation, discussion, or orders given between Stulgies and the plainitff that could possibly give rise to the inference of Stulgies extending her a business invitation to come on this construction site. The most that can be said is that Sulgies knew that she came on the premises, consented thereto, and gave implied permission that she, with her sister, Mrs. Powell, might visit in the future in the same capacity. We come to the conclusion that the plaintiff, at the time in question, was on the premises as a mere licensee. Neither defendant Stulgies, nor any of his employees, were on the premises the day of the accident and had no knowledge of the placement of the wallboard. There being no evidence of affirmative acts of conduct constituting a willful or wanton injury within the announced rule, there is no liability on the part of the contractor, and the trial court's judgment in this respect is correct. The Southern Lumber and Coal Company, Inc., the wallboard supplier, is subject to the same liability and en-

joys the same immunity as the contractor. See Restatement, Torts, § 384, p. 1024. If the case falls as against Stulgies, it falls as to Southern Lumber and Coal Company, Inc.

It is argued that the evidence shows that Stulgies never ordered plaintiff off the construction site and that, therefore, there was an implied business invitation. In Spence v. Polenski Bros., Schellak & Co., 110 Neb. 56, 193 N. W. 101, we said: "Mere knowledge or acquiescence on the part of the owner that persons are using his premises does not amount to an invitation so as to impose upon the owner the obligation which he owes to an invited guest."

Permission, express or implied, does not stamp the person entering on premises as an invitee, establishes no higher relation than licensee, and this is particularly so because the occupant or possessor may be under constraint not to refuse permission. 38 Am. Jur., Negligence, § 98, p. 758; Arthur v. Standard Engineering Co., 193 F. 2d 903, 32 A. L. R. 2d 408.

Plaintiff argues that Mrs. Powell was an invitee and by reason thereof the plaintiff was an invitee. Assuming that Mrs. Powell was an invitee, there is no authority cited to support a conclusion that she could extend the scope or purpose of the invitation granted to her. This authority would have to flow from the inviter Stulgies, and the knowledge that someone else accompanies a business visitor does not bind the owner or possessor. Rhode v. Duff, 208 F. 115.

There is evidence in the record that the title to the property involved was taken with the plaintiff as grantee jointly with right of survivorship, and that the plaintiff signed some loan papers to help her sister, Mrs. Powell. The evidence is that this arrangement was only for the purpose of taking care of the children of Mrs. Powell, the owner, in the event of her death. It is established without dispute that the two sisters themselves regarded Mrs. Powell as the owner, that it was

her home and house, and that she had complete control over the construction of it. There is no evidence that Stulgies had any knowledge of this relationship between the sisters, or that it in any way had any effect on the conduct of the parties as it related to the determination of the scope of the permission or invitation to the construction premises. The plaintiff testified that she had no financial interest in the house, that as far as she was concerned Mrs. Powell was the owner of the house, that her name was on the deed at the suggestion of Mrs. Powell, that Mrs. Powell had the final "say-so," that Mrs. Powell would talk thinks over with her and then Mrs. Powell would "decide," that they talked things over before they "went," that Mrs. Powell "knew just what she wanted when we got there," and that "there was no necessity for me to talk." In other testimony, the plaintiff testified that she "rode along," and does not recall even giving her sister any suggestions or anything. It appears that no finding of a business invitation to the mutual advantage of Stulgies and the plaintiff could be inferred from this testimony.

In the light of our determination that the plaintiff was a mere licensee on the premises at the time of the accident and that no duty was owed her except to not injure her by willful and wanton conduct, it is unnecessary to discuss the other issues raised in this case. The district court came to the same conclusion by directing a verdict for the defendants. Its judgment is correct and is affirmed.

AFFIRMED.