FRED E. WILES, PERSONAL REPRESENTATIVE OF THE ESTATE OF
MARK A. WILES, DECEASED, APPELLANT, V. WILLIAM R.
METZGER, TRUSTEE OF THE WILLIAM A. METZGER TRUST ESTATE
AND PERSONAL REPRESENTATIVE OF THE ESTATE OF WILLIAM A.
METZGER, DECEASED, APPELLEE.
FRED E. WILES, PERSONAL REPRESENTATIVE OF THE ESTATE OF
MICHAEL W. WILES, DECEASED, APPELLANT, V. WILLIAM R.
METZGER, TRUSTEE OF THE WILLIAM A. METZGER TRUST ESTATE
AND PERSONAL REPRESENTATIVE OF THE ESTATE OF WILLIAM A.
METZGER, DECEASED, APPELLEE.

473 N.W.2d 113

Filed August 23, 1991.    Nos. 89-165, 89-166.

David V. Chebatoris, of Clements, Svoboda & Chebatoris, for appellant.

Thomas A. Otepka and John W. Iliff, of Gross & Welch, P.C., for appellee.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

Mark A. and Michael W. Wiles died when the ceiling of a cave in which they were camping collapsed on the boys. Fred E. Wiles, personal representative of the estates of Mark and Michael Wiles, filed wrongful death actions against the estates of William A. Metzger, the owner who possessed the real estate

where the cave was located. The district court for Cass County granted summary judgments for Metzger, and Wiles appeals.

## FACTUAL BACKGROUND

The cave on the Metzger property was located in the side of a sandstone hill situated in a remote wooded area. Trees grew on the hill above the cave's entrance and on the slope of the hill leading to the cave's entrance, an opening approximately 12 feet wide and 18 feet high in the concave side of the hill. One approaching the cave's entrance would climb a gentle slope at the base of the hill. From the mouth of the cave there was a slight incline descending to an interior plateau in the cave's main chamber several feet within the hill, although part of the chamber was still visible from the cave's opening. From the main chamber, tunnels, some as much as 100 yards long, led further into the hill. These tunnels were apparently used in a former quarrying operation for extraction of quartz pebble conglomerate from the "Cretaceous Age Dakota Sandstone" composition of the earth. Mining operations inside the hill had ceased very many years ago. There were no braces or shoring evident from the prior mining operations, and there were no present braces or shoring for any aspect of the cave or tunnels.

As early as 1983, Mark Wiles and his friends camped in the cave on the Metzger property and enjoyed exploring the cave. On one trip to the cave, Mark took his brother, Michael, and showed Michael around the cave. Other people had also visited the cave and left their "writings on the wall." Metzgers were aware that in some areas of the cave, the ceiling collapsed from time to time. One of the Metzgers had even considered sealing the cave. However, the cave remained open, since Metzgers' horses used the cave to keep cool in the summer. There was some fencing on the perimeter of the premises where the cave was located.

On the evening of August 16, 1985, Mark, who had visited the Metzger cave at least three times since 1983, decided to take his brother and some friends, Douglas Miller, David Terry, and David Funkhouser, on an overnight camping trip to the cave. Mark, 18 years of age, had been an average student and was a high school graduate who was undecided about his future. He

went hunting and fishing and "enjoyed the outdoors." Mark was interested in mechanics, worked on his car, and had summer farm jobs while he was trying to decide whether he would enter the military service or pursue some type of vocational training. Michael, who was 12 years of age and had previously visited the Metzger cave, had just completed seventh grade and was scheduled to return to school in the fall. Michael participated in athletics and, like Mark, was an average student who enjoyed the outdoors. Neither Mark nor Michael had any disability and each had the average intelligence and general life experiences of boys their own age.

Mark, Michael, and their friends collected their camping gear and drove on a gravel road along the north side of the Metzger property. After parking the car, the boys walked south across a field toward the wooded area where the cave was located. On arrival at the cave, the boys built a small fire in the main chamber of the cave, ate, and bedded down for the night. Ten minutes later, the cave ceiling collapsed, crushing and killing Mark, Michael, and David Funkhouser. Miller and Terry dashed from the cave and ran approximately a mile to the Omaha Fish and Wildlife Reserve headquarters north of the Metzger property and from there notified authorities about the cave-in.

Responding to the summons for assistance shortly after midnight, Deputy Sheriff Joseph Baldassano drove his cruiser to the wildlife headquarters, picked up Miller, and proceeded west on the gravel road between the wildlife station and the Metzger property. Baldassano drove to the end of the road, parked his cruiser, and, with Miller, crossed some railroad tracks, crawled over a barbed wire fence, and began running toward the Metzger cave, where Baldassano found the bodies of the three boys buried in the cave-in. Although Baldassano never saw the boys' car on his arrival at the scene, he had parked his cruiser at a location different from the site where the boys had parked their car, or, as Baldassano described the locations, the boys had parked their car in "a different location than where I entered" the field leading to the Metzger cave. That night, Baldassano, in the course of moving from his cruiser to the cave, never noticed any "keep out" or "no trespassing"

signs, although one of the Metzgers later told Baldassano that people ignored the signs posted at the Metzger property. Later, Baldassano recalled a newspaper photograph depicting an automobile tire with the inscription "keep out," which was positioned near a gate entrance into the Metzger property, but Baldassano could not correlate that gate with the point at which he and Miller had entered the Metzger field en route to the cave.

## SUMMARY JUDGMENT

Fred Wiles had filed amended petitions and alleged that Mark and Michael had died as a result of Metzger's negligence:

(a) In failing to close the caves when [Metzger] knew, or should have known, that portions of the ceiling had fallen in the past prior to the accident;

(b) In failing to fence off or barricade said sandstone caves;

(c) In failing to place any sign or other warning of danger on or near said sandstone caves warning of the dangerous condition existing in the caves;

(d) In failing to warn of the dangerous condition then existing, namely, that portions of the ceiling in the caves had fallen in the past.

Wiles further alleged that the attractive nuisance doctrine applied, and, therefore, Metzger owed a duty of reasonable care to the boys.

Metzger moved for summary judgments and offered depositions containing the information found in the "factual background" part of this opinion. Also, Metzger introduced an affidavit of Stephen White, a geologist who conducted an investigation of the Metzger cave and observed several characteristics about the cave, including an opening in a hillside, tunnels which run in various directions throughout and become narrower at the ends, cool, underground, dark, no man-made structural support for ceilings or walls, no evidence of mining, rock walls and ceiling, and a deep entrance. Based on his observations, White concluded that the Metzger cave "simulates or is a duplicate of a natural condition." Wiles offered no evidence.

The district court decided that the attractive nuisance

doctrine applies to "situations where physical harm to trespassing children is caused by an artificial condition upon the land and not to things or conditions which were similar to or a reproduction of nature"; hence, the attractive nuisance doctrine was inapplicable in the Wiles cases, since "the sandstone caves were duplicates of a natural condition." Also, assuming that Mark and Michael were, at most, licensees on the Metzger property, the court concluded that Metzger owed only a duty to refrain from injuring the boys "by willful or wanton negligence or a designed injury or by failure to warn of a hidden danger or peril known to [Metzger] but unknown or unobservable by [Mark and Michael] in the exercise of ordinary care." The district court sustained the Metzger motions for summary judgments and dismissed Wiles' wrongful death actions, since, in the court's view, there was no evidence which might establish Metzger's liability to a licensee.

## ASSIGNMENTS OF ERROR

Wiles contends that the district court erred (1) by determining that the Metzger cave was akin to a natural condition and, therefore, outside the scope of the attractive nuisance doctrine and (2) in concluding that Metzger "owed [Mark and Michael] a duty to refrain from injuring [them] by willful or wanton negligence or a designed injury or by failure to warn of a hidden danger or peril known to [Metzger] but unknown or unobservable by the [boys] in the exercise [of] ordinary care," and dismissing the wrongful death actions.

## STANDARD OF REVIEW

A summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the moving party is entitled to judgment as a matter of law. . . . In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

*Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 162-63, 425 N.W.2d 872, 875 (1988). Accord, *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990); *DeCamp v. Lewis*, 231 Neb. 191, 435 N.W.2d 883 (1989). See, also, Neb. Rev. Stat. § 25-1332 (Reissue 1989) (sources of information for a summary judgment).

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law if the evidence presented for summary judgment remains uncontroverted. . . . After the movant for a summary judgment has shown facts entitling the movant to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party.

*Wilson v. F & H Constr. Co.*, 229 Neb. 815, 819, 428 N.W.2d 914, 917 (1988). Also, "as a procedural equivalent to a trial, a summary judgment is an extreme remedy because a summary judgment may dispose of a crucial question in litigation, or the litigation itself, and may thereby deny a trial to the party against whom the motion for summary judgment is directed." *Wachtel v. Beer*, 229 Neb. 392, 399, 427 N.W.2d 56, 61 (1988).

## ATTRACTIVE NUISANCE DOCTRINE

In *Gubalke v. Estate of Anthes*, 189 Neb. 385, 390-91, 202 N.W.2d 836, 840 (1972), this court, quoting from and adopting Restatement (Second) of Torts § 339 (1965), defined the "attractive nuisance" doctrine as:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or

serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to the children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

See, also, *Davis v. Cunningham*, 196 Neb. 8, 241 N.W.2d 343 (1976).

In Nebraska, therefore, the attractive nuisance doctrine has developed to mitigate the severity of common-law liability based on possession of real estate insofar as premises liability applies to young children. Underlying the attractive nuisance doctrine is recognition of a young child's inability to protect himself in a situation encountered through a child's attraction to a dangerous condition and the child's immaturity and lack of judgment for appreciation of danger involved in the condition encountered. *Barnhizer v. Paradise Valley Unified Sch. Dist.*, 123 Ariz. 253, 599 P.2d 209 (1979); *O'Keefe v. South End Rowing Club*, 64 Cal. 2d 729, 414 P.2d 830, 51 Cal. Rptr. 534 (1966); *Moseley v. City of Kansas City*, 170 Kan. 585, 228 P.2d 699 (1951); *Lister v. Campbell*, 371 So. 2d 133 (Fla. App. 1979). Consequently, under the attractive nuisance doctrine, a possessor of premises may be liable for a young child's injury or death if the possessor fails to exercise reasonable care to eliminate danger from the premises or otherwise protect young children from the dangerous condition of the premises. *Gubalke v. Estate of Anthes, supra; Davis v. Cunningham, supra.*

Wiles suggests that the attractive nuisance doctrine should not be restricted to artificial conditions, but should be extended to include liability for a natural condition which is dangerous to young children. Most courts have refused to apply the attractive nuisance doctrine to natural conditions or conditions which are similar to or replicate nature; for example, see,

*Gagnier v. Curran Const. Co.*, 151 Mont. 468, 443 P.2d 894 (1968) (cave-in of a ditch used for waterline construction); *Fitch v. Selwyn Village*, 234 N.C. 632, 68 S.E.2d 255 (1951) (drowning in a deep creek adjacent to a residential development); and *Anderson v. Reith-Riley Const. Co.*, 112 Ind. App. 170, 44 N.E.2d 184 (1942) (cave-in of a hole or tunnel being dug by a child in a perpendicular wall of a pit excavated for sand). Although § 339 of the Restatement fashions an attractive nuisance doctrine in reference to artificial conditions only, the American Law Institute inserted a "Caveat" immediately below § 339: "The Institute expresses no opinion as to whether the rule [stated in § 339] may not apply to natural conditions of the land." The Restatement, *supra* at 197.

However, a well-known commentator has observed and believes that origin of a condition may be a factor in determining whether a child appreciates a risk, but should not be dispositive on applicability of the attractive nuisance doctrine; consequently, the distinction between natural and artificial conditions should be abandoned. See Prosser and Keeton on the Law of Torts, *Owners and Occupiers of Land* § 59 at 403 (5th ed. 1984): "It is difficult to see why the origin of the condition should in itself be dispositive on liability, if the possessor could easily remove it or protect against it, and fails to do so." See, also, Note, *Torts: Attractive Nuisance Doctrine: Applicability to Natural Conditions*, 2 Okla. L. Rev. 537 (1949); Note, *Trespassing Children: A Study in Expanding Liability*, 20 Vand. L. Rev. 139 (1966). Cf. *King v. Lennen*, 53 Cal. 2d 340, 348 P.2d 98, 1 Cal. Rptr. 665 (1959) (attractive nuisance doctrine applies notwithstanding the common nature of a danger, if the child is too young to realize the danger).

For applicability of the attractive nuisance doctrine to a negligence action, a plaintiff has the burden to show that as the result of a child's youth, the child involved in the action failed to discover a dangerous condition on the possessor's land or realize the risk from the dangerous condition. *O'Keefe v. South End Rowing Club*, 64 Cal. 2d 729, 414 P.2d 830, 51 Cal. Rptr. 534 (1966); *Hocking v. Duluth, Missabe & Iron Range Ry. Co.*, 263 Minn. 483, 117 N.W.2d 304 (1962); *Dragonjac v. McGaffin Con. & Sup. Co.*, 409 Pa. 276, 186 A.2d 241 (1962).

Thus, if a child understood and appreciated the dangerous condition of or on the possessor's land, the attractive nuisance doctrine is inapplicable to a negligence action for a child's bodily injury or death. See, *Hughes v. Union Pacific R. Co.*, 114 Idaho 466, 757 P.2d 1185 (1988); *Barnhizer v. Paradise Valley Unified Sch. Dist., supra*; *McGill v. City of Laurel*, 252 Miss. 740, 173 So. 2d 892 (1965); *City of Dothan v. Gulledge*, 276 Ala. 433, 163 So. 2d 217 (1964); *Dean v. Construction Co.*, 251 N.C. 581, 111 S.E.2d 827 (1960); *Moseley v. City of Kansas City, supra*; *Brannon v. Harmon*, 56 Wash. 2d 826, 355 P.2d 792 (1960).

Recently, in *Sikyta v. Arrow Stage Lines, ante* p. 289, 304, 470 N.W.2d 724, 733 (1991), we stated: "[A] plaintiff's knowledge of danger, as an element in assumption of risk, may be proved by circumstantial evidence, since knowledge is a state of mind or a mental process." Similarly, a child's realization of the risk from a dangerous condition, in or on a possessor's land, may be established by circumstantial evidence. See *O'Keefe v. South End Rowing Club, supra* at 743 n.8, 414 P.2d at 839 n.8, 51 Cal. Rptr. at 543 n.8: "Such realization will ordinarily be shown by circumstantial evidence, and among that evidence falls the fact that the age, intelligence, and experience of the individual plaintiff are such that anyone similarly endowed would have realized the danger." " 'Circumstantial evidence' means facts or circumstances, proved or known, from which existence or nonexistence of another fact may be logically inferred or deduced through a rational process." *State v. Jasper*, 237 Neb. 754, 763, 467 N.W.2d 855, 862 (1991). Accord *State v. Twohig, ante* p. 92, 469 N.W.2d 344 (1991).

Several courts have found that the doctrine of attractive nuisance is inapplicable in a negligence action for a child's bodily injury or death resulting from a cave-in on a child who has the capacity, experience, and judgment of normal young children to realize the danger of earth collapsing into a cave or tunnel. In *Anderson v. Reith-Riley Const. Co.*, 112 Ind. App. 170, 44 N.E.2d 184 (1942), the court considered the trial court's dismissal of a wrongful death action involving a 9-year-old boy who was killed when he tunneled into a bank of a sandpile which collapsed and killed the child. In affirming the dismissal

of the plaintiff's action, the court commented:

> [A] common danger in cliffs and embankments is that of cave-ins from excavation below the surface. And it is common for children in play to make such excavations in the sides of cliffs and embankments for the purpose of creating caves, tunnels, etc. So they are early instructed as to the danger of cave-ins and are sufficiently presumed to know the danger that if the owner of private property by excavating on his own property, creates an artificial cliff or embankment, merely duplicating the work of nature without adding any new dangers, and a child, without invitation, ventures on the private property, excavates below the surface and is injured or killed by a resultant cave-in, the owner is not liable because of having created an "attractive nuisance." Nor does the rule change with the varying texture of the earth. The danger is the same danger, real and obvious, with only the percentage of probability of the occurrance [sic] increased or decreased with the earth's fineness or firmness.

112 Ind. App. at 173, 44 N.E.2d at 185.

Summary judgment for a landowner was also sustained in *Sparks v. Casselberry Gardens, Inc.*, 227 So. 2d 686 (Fla. App. 1969), where a 14-year-old boy appreciated and realized the danger of a cave-in while he was in an unsupported cave. See, also, *Coleman v. Associated Pipeline Contractors, Inc.*, 444 F.2d 737 (5th Cir. 1971) (under ordinary conditions, any child old enough to be allowed at large may reasonably be expected to have understood and appreciated the dangers in digging a cave in a 12-foot-high embankment). Cf. *McDermott v. Kaczmaret*, 2 Wash. App. 643, 654, 469 P.2d 191, 198 (1970), where the court, confronted with a 7-year-old child's fall from a cliff above a quarry, affirmed a summary judgment for a landowner and stated: "In one of life's earliest lessons, a child learns that the law of gravity applies indiscriminately. Even before his first step, a toddler begins his lifelong accommodation to nature's pervading and inexorable force."

We keep in mind that the attractive nuisance doctrine has developed from recognition of a young child's inability to provide self-protection when the child has been attracted to a

dangerous condition, but immaturity and lack of judgment prevent the child's realization of the danger involved in the condition encountered. In reference to the attractive nuisance doctrine, the older and more experienced and intelligent a child, the less reason for application of the doctrine.

Mark was 18 years of age, Michael 12. Both boys had average intelligence, were involved in various outdoor activities, and, generally, had the normal life experiences which might be reasonably expected in the lives of boys their own age. As a result of Mark's and Michael's age and intelligence, and in accordance with the general life experiences of boys the same age, Mark and Michael were aware of gravity and other forces of nature pertaining to the cave. Therefore, both Mark and Michael were old enough, and had the mental capacity, to realize the distinct danger involved in their presence within the Metzger cave, namely, the surrounding earth might collapse to fill the void of the cave. The peril of a cave-in was open and obvious to the unfortunate young men. Thus, under the circumstances existing in Wiles' cases, Mark Wiles and Michael Wiles each had the experience and judgment to realize the danger inherent in the cave, that is, they understood and appreciated the risk of their entering a cave such as that on the Metzger property; hence, Wiles failed to establish a necessary condition for application of the attractive nuisance doctrine—a young child's inability to realize or appreciate danger encountered on a possessor's premises.

We are not stating, expressly or impliedly, that the age of the boys, in and of itself, is the determinant for application of the attractive nuisance doctrine. A child's age in connection with applicability of the attractive nuisance doctrine is important only as a factor in determining whether a child discovers the condition which proves to be dangerous and realizes, or can be expected to realize, the risk from the dangerous condition on another's land. Consequently, a child's age supplies no bright line for application of the doctrine in a negligence action. Rather, applicability of the attractive nuisance doctrine depends on various factors, such as a child's age, intelligence, knowledge, experience, and ability or capacity to discover, observe, understand, or appreciate the nature of the danger or

condition of or on a possessor's land and avoid the danger in the condition which causes the child's injury or death. See, *Schorah v. Carey*, 331 A.2d 383 (Del. 1975); *O'Keefe v. South End Rowing Club*, 64 Cal. 2d 729, 414 P.2d 830, 51 Cal. Rptr. 534 (1966); *Ekdahl v. Minnesota Utilities Co.*, 203 Minn. 374, 281 N.W. 517 (1938); *Fouraker v. Mullis*, 120 So. 2d 808 (Fla. App. 1960); *Lister v. Campbell*, 371 So. 2d 133 (Fla. App. 1979). Concerning the preceding illustrative factors, no factor is weighted, that is, there is no prescribed method by which more or less weight is assigned to any of the illustrative factors bearing upon applicability of the attractive nuisance doctrine.

Consequently, when the several illustrative factors are considered, we conclude that as a matter of law the attractive nuisance doctrine is inapplicable in Wiles' cases. For that reason, we affirm the summary judgments that the attractive nuisance doctrine is inapplicable in Wiles' actions. Although the district court based its conclusion on the condition of the premises, the condition of Mark and Michael Wiles, namely, their appreciation of the danger involved, is the reason for inapplicability of the attractive nuisance doctrine. See *Sommerfeld v. City of Seward*, 221 Neb. 76, 80, 375 N.W.2d 129, 132 (1985): "Where the record adequately demonstrates that the decision of a trial court is correct, although such correctness is based on a ground or reason different from that assigned by the trial court, the Supreme Court will affirm." Accord, *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990); *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 417 N.W.2d 757 (1988).

## METZGER'S DUTY TO A LICENSEE

Although the attractive nuisance doctrine is inapplicable in Wiles' actions, we must examine the dismissal of the actions as a result of the summary judgments that the undisputed facts, and inferences from those facts, preclude Metzger's liability as a matter of law.

From the undisputed evidence presented to the district court, it was an established fact that Mark and Michael Wiles had been to the Metzger cave on occasions before the fatal night. Persons other than the Wiles boys had also ventured into the cave in the

past. Although the trial court and counsel seemed relatively sure about the location of some landmarks on the Metzger property, we are not quite as certain about those important features in Wiles' cases. While there is some mention of "keep out" and "no trespassing" signs regarding the Metzger land, nothing locates those signs in relation to the boys' route to the cave. In fact, the path taken by the boys en route to the cave is unknown. Deputy Baldassano offered no testimony on the location of the boys' car. Without the specific location of the boys' parked car, we cannot begin to ascertain the boys' route from their car to the Metzger cave. Did the boys follow the same route taken by Baldassano in his course to the cave? If so, there were no signs for exclusion of the boys from the Metzger property. Moreover, the record fails to disclose whether the fence mentioned by Baldassano was a complete perimeter fence notwithstanding Baldassano's testimony that he crawled over a fence and later recalled a fence gate somewhere on the Metzger land. Perhaps counsel's thorough familiarity with the setting contains the locative information, but the record does not. In the state of the record, it is a reasonable inference that the boys parked their car somewhere on the gravel road north of the cave and simply walked south across the adjacent Metzger tract without encountering a fence or observing any sign of the type mentioned in Baldassano's testimony. For that matter, while Metzgers may have posted signs on the premises before the night of the accident, nothing indicates that the signs were actually posted at the time when the boys entered the Metzger premises. We derive no certainty from testimony about signs which were possibly nonexistent when the boys entered the premises and testimony about fences which may not serve as a barrier for anyone seeking to enter the Metzger land.

Mark and Michael Wiles, who were repeat visitors to the Metzger cave, may be characterized and legally classified as licensees in view of the record presented. "A licensee may be defined as a person who is privileged to enter or remain upon the premises of another by virtue of the possessor's express or implied consent, but who is not a business visitor." *Roan v. Bruckner*, 180 Neb. 399, 403, 143 N.W.2d 108, 111 (1966).

In *Guenther v. Allgire*, 228 Neb. 425, 428-29, 422 N.W.2d

782, 785 (1988), this court stated:

> The duty of [a licensor is] only to refrain from injuring . . . a licensee by willful or wanton negligence or designed injury, or to warn him as a licensee of a hidden danger or peril *known* to the owner but unknown or unobservable by the licensee, who is required to exercise ordinary care. . . . In order for an action to be willful or wanton, the evidence must prove that a defendant had *actual* knowledge that a danger existed and that the defendant *intentionally* failed to act to prevent harm which was reasonably likely to result. The term imparts knowledge and consciousness that injury is likely to result from the act done or the omission to act, and a constructive intention as to the consequences. . . .
>
> To constitute willful negligence the act done or omitted must be intended or must involve such reckless disregard of security and right as to imply bad faith. Wanton negligence has been said to be doing or failing to do an act with reckless indifference to the consequences and with consciousness that the act or omission would probably cause serious injury.

(Emphasis in original.) See, also, *Garreans v. City of Omaha*, 216 Neb. 487, 345 N.W.2d 309 (1984).

Considering the evidence in a light most favorable to Wiles, especially the absence of any evidence concerning the boys' route to the cave and existence of warning signs, we may reasonably infer that there was no fence or warning sign on the path taken by the boys. Also, Metzger had actual knowledge that people entered his cave and that the cave's ceiling had occasionally collapsed. Under the circumstances, we cannot state as a matter of law that failure to erect a barrier or warning sign would not support a finding of willful or wanton negligence on the part of Metzger. Consequently, there were material issues of fact, so that Metzger was not entitled to judgments as a matter of law regarding Wiles' claims based on premises liability.

Therefore, we affirm the district court's summary judgments that the doctrine of attractive nuisance is inapplicable in Wiles' actions, but we reverse the summary judgments of the district

court on the question of the liability concerning the Metzger premises.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.