JANET A. PALMTAG, APPELLEE, V. GARTNER CONSTRUCTION CO., A NEBRASKA CORPORATION, APPELLANT.

513 N.W.2d 495

Filed March 25, 1994.    No. S-92-387.

Alan L. Plessman for appellant.

James L. Schneider, of Kennedy, Holland, DeLacy & Svoboda, and Otto H. Wellensiek for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

CAPORALE, J.

## I. STATEMENT OF CASE

In this negligence action, the district court, pursuant to verdict, entered judgment in favor of the injured plaintiff-appellee, Janet A. Palmtag, against the defendant-appellant, Gartner Construction Co. Defendant appealed to the Nebraska Court of Appeals, and we, under the authority granted by Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 1992), removed the matter to this court in order to regulate the caseloads of the appellate courts. Defendant asserts, in summary, that the district court erred in (1) overruling its motion made at the close of plaintiff's evidence to either dismiss the action or direct a verdict in defendant's favor, (2) refusing to grant defendant's subsequent motion for judgment notwithstanding the verdict, and (3) instructing the jury. Because the record sustains the last assignment of error, we reverse the judgment of the district court and remand the cause for further proceedings.

## II. FACTS

Plaintiff and her husband, John Palmtag, hired defendant to remodel their newly purchased home under an oral arrangement whereunder defendant was to be paid for time and materials. Defendant was given the keys to the house, and plaintiff and her husband visited the structure to monitor the progress of the work; the husband visited on a daily basis and plaintiff once or twice a week.

Defendant's employees were usually present during the husband's visits on workdays, and the house was open. Even during those times when the employees were not around, the house was usually left open, and the husband would be able to "just go in." According to the husband, defendant's employees never limited or restricted where he could go. Plaintiff had once met a Caroline Gartner at the house to look at tile and possibly paint colors.

The remodeling included the removal of a spiral staircase which was located in the main floor entry area and descended

therefrom to the basement through a 5-foot-square opening.

The staircase was made up of pie-shaped treads. Attached to the narrow end of each tread was a round disk which when stacked one on top of another formed a center post with the treads fanned around it. The top disk fit up under the main floor landing. Working without reference to any plans, David Njus, an employee of defendant, disassembled the staircase by beginning with the top tread and working his way down. As he took out each tread and disk, the center post was whittled down.

A handrailing located around the staircase was taken out after the treads and center post were removed, leaving an empty opening in the floor. Njus also removed the plywood aprons and angle irons which were located along the underside of the landing, thus leaving the plywood floor around the opening jutting "something like a diving board out in the air."

After Njus removed the treads, aprons, and angle irons, he wondered how springy the outer edge of the flooring would be and checked it before leaving that evening by reaching up from the basement and hanging his full weight, 165 pounds, on it; nothing gave way. He then hung a wire and plywood barricade across the handrailing and walked on top of the landing area; he felt no sensation of weakness in it. In Njus' opinion, the landing felt solid, and he was "not anymore" concerned about the landing "not holding anybody's weight." Njus believed the landing would stay in place because he thought it was a contiguous part of the rest of the floor of the house. The landing, however, was a separate piece of wood which had been toenailed into the rest of the floor.

The barricade Njus hung was suspended diagonally across the landing from handrail to handrail on the main floor. It consisted of a wire, in the middle of which was hung a piece of plywood approximately 18 inches by 6 to 8 inches in size. It did not cover the hole and left half of the landing unguarded. No warning signs were attached to the barricade.

Plaintiff and her husband had arranged to meet at the house to review the remodeling work. Plaintiff, who was then 8 months pregnant and weighed 200 pounds, arrived at the house at about 5 p.m., accompanied by her 3-year-old son. She met

and spoke briefly with Njus and an unidentified employee of defendant, who were leaving for the day.

As she walked through the entry area, she did not know the staircase had been removed, but noticed "a wire with something hanging on it" and paused approximately 8 to 9 inches from the wire. She then saw that the staircase was gone, at which time she was probably about a foot from the opening. Plaintiff warned her son not to get close to the stairwell. As she paused long enough for her son to pass by, the landing collapsed. As a consequence, she fell to the basement floor and landed on her seat and hands, after which her back and head hit the floor. Her face hit something on the way down.

When the husband found plaintiff, she was in extreme pain and somewhat delirious. Plaintiff could not feel the fetus move, and both she and her husband thought she had ruptured her uterus. Plaintiff was hospitalized for 3 days following the accident and was diagnosed as having a 20-percent compression fracture of her 12th thoracic vertebra, a torus fracture of her right wrist, a sprained left ankle, and a very painful tailbone area. As a result of the compression fracture in her back, plaintiff suffered a 20- to 25-percent permanent disability. Her pregnancy successfully came to term approximately a month after she fell.

The husband remembered that the staircase had been removed for a couple of days before the accident, and he had seen the barricade in place across the stairwell handrailing. He also stated that he had walked across the landing without any problems, although he weighed 250 pounds at the time of the accident.

Jesse Sutton, a semiretired general contractor knowledgeable about the installation and removal of spiral staircases, was of the opinion that the spiral staircase provided the support for the landing area and that when it was removed, the whole structure of the landing area was weakened. Sutton testified that removing the plywood aprons and angle irons, coupled with the earlier removal of the center post, left nothing to support the landing other than the nails toenailing the landing to the rest of the flooring and the approximate 1-percent stability given by the tile which covered the entire

area.

Sutton further testified that the better way to support the landing when it was originally installed would have been to scab some joists from the surrounding floor so that they ran under the landing. While the subfloor rested on top of a joist, its edges flush with the joist underneath it, the landing butted against the edges of the subfloor but did not rest on a joist. That this was not done when the house was originally built should have been apparent to Njus.

Moreover, in Sutton's opinion, the barricade Njus made did not comply with industry standards. He indicated that the proper barricade would have been either metal framing or a 2-by-4 stud wall with signs and flagging on it.

Njus agreed with Sutton's opinion regarding the support for the landing area, admitting that the center post had supported the landing and that the angle irons and plywood aprons provided "maybe some support."

## III. ANALYSIS

### 1. DISMISSAL OR DIRECTION OF VERDICT

Claiming in the first summarized assignment of error that plaintiff failed to prove defendant was negligent or that there was any causal connection between its conduct and her fall, defendant urges that the district court erred in failing to sustain its motion made at the close of plaintiff's evidence to either dismiss the cause or to direct a verdict in defendant's favor.

However, after the district court overruled the motion, defendant proceeded to adduce evidence. A defendant who moves for a directed verdict at the close of the plaintiff's evidence and, upon the overruling of such motion, proceeds with trial and introduces evidence waives any error in the ruling on the motion for a directed verdict. *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992); *Sikyta v. Arrow Stage Lines*, 238 Neb. 289, 470 N.W.2d 724 (1991); *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991); *Lincoln Co. Sheriff's Emp. Assn. v. Co. of Lincoln*, 216 Neb. 274, 343 N.W.2d 735 (1984). See, also, *State v. Huebner, ante* p. 341, 513 N.W.2d 284 (1994). We have also uniformly held that a motion to dismiss for failure to prove a prima facie

case should be treated as a motion for a directed verdict. *In re Estate of Chaney*, 232 Neb. 121, 439 N.W.2d 764 (1989); *Wax v. Co-Operative Refinery Assn.*, 154 Neb. 42, 46 N.W.2d 769 (1951).

Therefore, we will not review the correctness of the district court's ruling on defendant's motion for a directed verdict or motion to dismiss. *Brown v. Farmers Mut. Ins. Co., supra; Lincoln Co. Sheriff's Emp. Assn. v. Co. of Lincoln, supra; Church of the Holy Spirit v. Bevco, Inc.*, 215 Neb. 299, 338 N.W.2d 601 (1983); *Baker v. Blue Ridge Ins. Co.*, 215 Neb. 111, 337 N.W.2d 411 (1983).

## 2. JUDGMENT NOTWITHSTANDING VERDICT

In its second summarized assignment of error, defendant challenges the district court's decision not to grant its motion for a judgment in its favor notwithstanding the verdict in favor of plaintiff. One difficulty from defendant's point of view in this regard is that it did not make a new motion for a directed verdict at the close of all the evidence or renew at that time the motion it had made at the close of plaintiff's case.

Neb. Rev. Stat. § 25-1315.02 (Reissue 1989) provides that a motion for a directed verdict made at the close of all the evidence is a prerequisite to a motion for judgment notwithstanding the verdict. Although at times we have stated that in order to obtain a judgment notwithstanding the verdict, a motion for a directed verdict must have been made during the course of trial, we have failed to clarify that such must be done at the close of all of the evidence. See, *Lockhart v. Continental Cheese, Inc.*, 203 Neb. 331, 278 N.W.2d 604 (1979); *Pearson v. Schuler*, 172 Neb. 353, 109 N.W.2d 537 (1961); *Springer v. Henthorn*, 169 Neb. 578, 100 N.W.2d 521 (1960); *Kohl v. Unkel*, 163 Neb. 257, 79 N.W.2d 405 (1956). We now expressly state that the "made during the course of trial" language means that a motion for judgment notwithstanding the verdict may not properly be sustained in the absence of a motion for a directed verdict made at the close of all the evidence, which motion should have been sustained because of a want of evidence. *Lockhart v. Continental Cheese, Inc., supra; Pearson v. Schuler, supra; Springer v. Henthorn, supra.*

Thus, defendant's motion for judgment notwithstanding the verdict is not before us.

### 3. INSTRUCTIONS

In its third and last summarized assignment of error, defendant asserts the district court incorrectly instructed the jury in that, contrary to defendant's requests, it failed to (a) itemize each of plaintiff's allegations of negligence, (b) permit the jury to determine plaintiff's status, and (c) define negligence.

### (a) Allegations of Negligence

Plaintiff alleged that defendant failed to maintain the premises in a reasonably safe condition, that defendant failed to warn or otherwise give her notice of an unsafe and hazardous condition about which defendant knew or should have known, that defendant invited plaintiff onto or permitted her to enter a portion of the house that defendant knew or should have known was in an unsafe and hazardous condition, and that defendant failed to maintain adequate support beneath the portion of the floor over which it knew or should have known plaintiff or others would walk while defendant performed its construction activities.

The district court's instructions advised the jury that the plaintiff alleged that

> as she walked across the floor adjacent to an interior stairway in her [house], the floor collapsed and she fell approximately eight feet onto a concrete floor below, in the basement of the [house]. She alleges that an employee of the defendant . . . had removed the support from beneath that section of the floor.

The district court also instructed the jury that before plaintiff could recover, she must have proved, by the greater weight of the evidence, each and all of the following:

> 1. That the defendant either created the condition, knew of the condition, or, by the exercise of reasonable care, would have discovered the condition;
>
> 2. That the defendant should have realized that the condition involved an unreasonable risk of harm to plaintiff;

3. The defendant should have expected that the plaintiff either:

a. would not discover or realize the danger; or

b. would fail to protect herself against the danger;

4. That the defendant failed to use reasonable care to protect plaintiff against the danger;

5. That the condition was the proximate cause of some damage to the plaintiff; and

6. The nature and extent of that damage.

Defendant argues that by failing to specify the acts of negligence which plaintiff alleged and which were supported by the evidence, the jury was permitted to speculate as to which of defendant's acts constituted negligence. It is true that where specific acts of negligence are alleged and supported by the evidence, it is error for the trial court to fail to instruct as to such allegations. *Enyeart v. Swartz*, 213 Neb. 732, 331 N.W.2d 513 (1983), *appeal after remand* 218 Neb. 425, 355 N.W.2d 786 (1984); *Pool v. Romatzke*, 177 Neb. 870, 131 N.W.2d 593 (1964). However, to establish reversible error in a trial court's refusal to give a requested instruction, one has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *Marple v. Sears, Roebuck & Co.*, 244 Neb. 274, 505 N.W.2d 715 (1993). Moreover, in reviewing a claim of prejudice from instructions given or refused, the instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there is no prejudicial error necessitating a reversal. *Vredeveld v. Clark*, 244 Neb. 46, 504 N.W.2d 292 (1993); *Behm v. Northwestern Bell Tel. Co.*, 241 Neb. 838, 491 N.W.2d 334 (1992); *Grote v. Meyers Land & Cattle Co.*, 240 Neb. 959, 485 N.W.2d 748 (1992).

Whatever else might be said about this phase of defendant's complaints concerning the district court's instructions, a mere reading of the portions of the district court's instructions set forth above makes it clear that defendant was not prejudiced by the district court's characterization of plaintiff's claims of

negligence. With the exception of the matter of notice, the instructions given accurately summarized those of plaintiff's allegations which were supported by the evidence; that is, defendant invited plaintiff to walk on an area from which the support had been removed.

Since the evidence supported plaintiff's allegation that defendant failed to warn her of the dangerous condition created by the removal of the support, the trial court erred in not instructing the jury as to that allegation of negligence. However, the error benefited defendant, for in that regard the instructions limited what the jury could consider as constituting defendant's lack of reasonable care. The jury could not know of claims about which it was not told and therefore could not take them into account. That being so, defendant could not have been prejudiced by the district court's disregard of plaintiff's failure-to-warn allegation.

### (b) Plaintiff's Status

Next, defendant complains that the district court determined as a matter of law that plaintiff was an invitee. Defendant urges that had the jury been permitted to consider the matter, it might well have found that plaintiff was but a licensee. We note at this point that the parties raise no issue as to whether the fact that plaintiff is an owner of the premises renders the invitee-licensee analysis inappropriate. However, because no such issue has been raised and because the case was tried on that theory, we, without passing any judgment on the matter, dispose of the case upon the theory on which it was tried. See, *Ingerslew v. Bartholomew*, 216 Neb. 836, 346 N.W.2d 258 (1984); *Mathis v. State*, 178 Neb. 701, 135 N.W.2d 17 (1965).

Under that circumstance, the determination as to whether plaintiff is an invitee or a licensee is indeed important, for the law imposes a duty of greater care for the protection of an invitee than it does for a licensee. *Presho v. J. M. McDonald Co.*, 181 Neb. 840, 151 N.W.2d 451 (1967).

Under our law, a licensee is defined as one who is privileged to enter or remain upon land by virtue of the possessor's consent. *Wiles v. Metzger*, 238 Neb. 943, 473 N.W.2d 113 (1991); *McCurry v. Young Men's Christian Assn.*, 210 Neb.

278, 313 N.W.2d 689 (1981); *Roan v. Bruckner*, 180 Neb. 399, 143 N.W.2d 108 (1966). A licensee is on the premises of another for the licensee's own interest or gratification. Such person is exercising the privilege solely for that person's own convenience or benefit and does not stand in any contractual relation with the owner or occupant of the premises. See *Malolepszy v. Central Market*, 143 Neb. 356, 9 N.W.2d 474 (1943).

In general, an invitee is a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of the owner or occupant for the mutual advantage of both parties. *Kliewer v. Wall Constr. Co.*, 229 Neb. 867, 429 N.W.2d 373 (1988); *Anderson v. Moser*, 169 Neb. 134, 98 N.W.2d 703 (1959); Restatement (Second) of Torts § 332 (1965).

A business visitor or invitee, on the other hand, is one who is expressly or impliedly invited or permitted to enter or remain on the premises in the possession of another for a purpose directly or indirectly connected with the business of the possessor or with business dealings between them. *Roan v. Bruckner, supra.* Similar definitions are found in *Schild v. Schild*, 176 Neb. 282, 125 N.W.2d 900 (1964), and *Lindelow v. Peter Kiewit Sons', Inc.*, 174 Neb. 1, 115 N.W.2d 776 (1962).

The distinction between invitees and licensees rests on the purpose for which the invitation was extended. See, *Roan v. Bruckner, supra*; *Lindelow v. Peter Kiewit Sons', Inc., supra* (express invitation or consent that person be on premises does not by itself make person an invitee). If it is an invitation for the personal pleasure, convenience, or benefit of the person enjoying the privilege, the person receiving it is a licensee. But if the invitation relates to the business of the one who gives it or for the mutual advantage of a business nature for both parties, the party receiving the invitation is an invitee. *Roan v. Bruckner, supra*; *Lindelow v. Peter Kiewit Sons', Inc., supra.*

Under this "economic benefit" test of invitee status, one who enters upon land of another is not entitled to the status of invitee unless the visit is directly or indirectly connected with business dealings between them. *Roan v. Bruckner, supra*; the Restatement, *supra.*

In *Presho v. J. M. McDonald Co., supra*, we relied on the

elements of the economic benefit test to determine whether the injured party, who went into the backroom of a retail store for an empty packing box to mail an article she had purchased elsewhere and for which no charge would be made, was an invitee or a licensee. Concluding that the injured party was not an invitee, we distinguished that part of the store in which merchandise was displayed and sold from that part in which the party was injured.

In similar fashion, the *Lindelow* court concluded that where the employees' use of the employer's recreational facilities conferred no immediate business benefit to the employer and the employees' attendance at the facilities had nothing to do with their work, the injured employee had been granted the privilege to make use of the facilities as a licensee and not as an invitee.

While the facts in *Von Dollen v. Stulgies*, 177 Neb. 5, 128 N.W.2d 115 (1964), are not identical to those now at hand, *Von Dollen* is nonetheless instructive. Therein, Von Dollen's sister was having a new house built. One afternoon when Von Dollen visited the premises to view the progress of the construction and to measure a window for a traverse rod, wallboard that had been stacked against a wall fell, scraping Von Dollen's right leg and pinning her right foot to the floor. Von Dollen argued that she was an invitee entitled to the affirmative duty of reasonable care to keep the premises safe and to anticipate her presence. We, however, concluded that Von Dollen was a mere licensee. Determinative was the fact that as Von Dollen had no contract with the builder, the builder was not responsible to Von Dollen for its work, and, thus, Von Dollen's visits had no relationship to any business or matter of mutual advantage to her and the builder.

The Kansas Supreme Court, in *Hanks v. Riffe Constr. Co.*, 232 Kan. 800, 658 P.2d 1030 (1983), determined that a purchaser of a house under construction, who was injured when a stack of Sheetrock fell on her leg, was, as a matter of law, a business invitee to whom the contractor owed a duty to exercise ordinary care. Noting that throughout the progress of the construction the purchaser from time to time had criticism about the quality of the workmanship, which she would relay to

the contractor's employees, the *Hanks* court reasoned that by "the execution of the real estate contract, [the purchaser] became [an owner] of a contract interest in the property [with] rights in the property substantially different from those of the casual visitor to the premises who is there only with the permission of the owner" and concluded that the purchaser had been invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land. *Id.* at 804, 658 P.2d at 1033.

In *Singleton v. Charlebois Const. Co.*, 690 S.W.2d 845 (Mo. App. 1985), a prospective home buyer was injured by falling Sheetrock as he inspected premises under construction. The *Singleton* court concluded the prospective buyer was a business invitee on the basis of the economic benefit to the builder and an implied invitation extended by the "For Sale" sign in front of the house. Furthermore, the court held that because the evidence which went to the establishment of the prospective buyer's status was not disputed, the determination of his status was for the court.

The facts essential to the determination of plaintiff's status here are likewise not in dispute. Defendant was doing work for plaintiff, and she thus had a right to control what was done under her arrangement with defendant. It is this circumstance which distinguishes the case at hand from *Von Dollen v. Stulgies, supra*.

Although there was no direct testimony that defendant expressly invited the Palmtags,

> [a]n invitation is inferred where there is a common interest or mutual advantage, or where an owner or occupant of premises, by acts or conduct, leads another to believe the premises, or something thereon, were intended to be used by such other person; that such use is not only acquiesced in by the owner or occupant, but is in accordance with the intention or design for which the way, place or thing was adapted or prepared or allowed to be used . . . .

*Kruntorad v. Chicago, R. I. & P. R. Co.*, 111 Neb. 753, 755-56, 197 N.W. 611, 612 (1924). See, also, *Guinn v. Murphy*, 788 F. Supp. 525 (D. Kan. 1992).

The only permissible inference from the undisputed facts is

that plaintiff was at the jobsite for the mutual benefit of herself and defendant and that her visit served defendant's economic interest. Thus, she was, as a matter of law, an invitee. See, *Troll v. Schoonmaker Bros., Inc.*, 34 A.D.2d 1030, 310 N.Y.S.2d 878 (1970) (homeowner injured visiting construction site of her new home had right to be on premises and was business invitee); *Polinelli v. Union Supply Co.*, 403 Pa. 547, 170 A.2d 351 (1961) (purchaser of house, who was at house at invitation of vendor, was business invitee). Contra *Shoffner v. Pilkerton*, 292 Ky. 407, 166 S.W.2d 870 (1942) (whether plaintiff homeowner was invitee was question for jury in action against contractor).

While instructions withdrawing consideration of material issues of fact presented by the pleadings and evidence are erroneous, *Ring v. Duey*, 162 Neb. 423, 76 N.W.2d 433 (1956), the trial court must eliminate all matters not in dispute and submit only the controverted questions of fact on which the verdict must depend, *Kluender v. Mattea*, 214 Neb. 327, 334 N.W.2d 416 (1983). When reasonable persons can reach only one conclusion, questions of fact which would normally be submitted to a jury become questions of law for the court to decide. *Gillam v. Firestone Tire & Rubber Co.*, 241 Neb. 414, 489 N.W.2d 289 (1992); *Ditloff v. Otto*, 239 Neb. 377, 476 N.W.2d 675 (1991); *Economy Housing Co. v. Rosenberg*, 239 Neb. 267, 475 N.W.2d 899 (1991). Where facts are conceded, undisputed, or are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question as a matter of law, rather than submit it to the jury for determination. *Johnson v. First Nat. Bank & Trust Co.*, 207 Neb. 521, 300 N.W.2d 10 (1980); *Woodsmall v. Marijo, Inc.*, 206 Neb. 405, 293 N.W.2d 378 (1980).

Accordingly, the district court correctly determined plaintiff's status to be that of an invitee as a matter of law.

### (c) Definition of Negligence

In its final challenge to the instructions, defendant denounces the district court's failure to define the word "negligence," arguing that such failure deprived the jury of the ability to correctly judge defendant's conduct.

But the word "negligence" appears nowhere in the

instructions or verdict forms, and, therefore, its definition was not left for the jury's own interpretation; rather, the issue becomes whether the instructions given regarding defendant's standard of care correctly stated the law. See, *Cassio v. Creighton University*, 233 Neb. 160, 446 N.W.2d 704 (1989); *Zeeb v. Delicious Foods*, 231 Neb. 358, 436 N.W.2d 190 (1989).

As noted in part III(3)(a) above, the district court advised the jury that it was plaintiff's burden to prove, among other things, that defendant had "failed to use reasonable care to protect" her from the condition described elsewhere in the instruction. That was an acceptable means of informing the jury that in order for plaintiff to recover, it was necessary that she prove that defendant had breached its described duty by having failed to exercise the requisite degree of care toward her.

The difficulty is that nowhere in its instructions did the district court define reasonable care as being that degree of caution which an ordinary, or reasonably prudent, person would exercise under like circumstances. See *Black v. C., B. & Q. R. Co.*, 30 Neb. 197, 46 N.W. 428 (1890). As a consequence, the instructions erroneously and prejudicially failed to limit the jury's consideration to the degree of caution a reasonably prudent contractor would have exercised in like circumstances.

It is true that defendant did not ask the district court to define reasonable care, but the concept is closely related to defendant's request that the district court define negligence. In any event, while ordinarily the failure to object to instructions after they have been submitted for review will preclude raising an objection thereafter, a trial judge is nonetheless under a duty to correctly instruct on the law without any request to do so, and an appellate court may take cognizance of plain error and thus set aside a verdict because of a plainly erroneous instruction to which no previous objection was made. See, *Katskee v. Nevada Bob's Golf of Neb.*, 238 Neb. 654, 472 N.W.2d 372 (1991); *Keller v. Noble*, 229 Neb. 542, 428 N.W.2d 170 (1988); *First West Side Bank v. Hiddleston*, 225 Neb. 563, 407 N.W.2d 170 (1987).

The situation here is not unlike that presented in *Enyeart v. Swartz*, 213 Neb. 732, 331 N.W.2d 513 (1983), *appeal after remand* 218 Neb. 425, 355 N.W.2d 786 (1984), wherein we held

that the failure to define proximate cause constituted plain error requiring a new trial.

## IV. JUDGMENT

Thus, the judgment of the district court must be, and hereby is, reversed and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.